IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SARAH BORCHGREVINK, § <br> REPRESENTATVE OF THE ESTATE OF § <br> MATTHEW RYAN SHELTON, DECEASED, § <br> AND MARIANNA RUTH THOMPSON § <br> Statutory Wrongful Death Beneficiary of § <br> MATTHEW RYAN SHELTON, DECEASESD § <br>  *Plaintiffs* § <br> v. § <br>  § <br> HARRIS COUNTY, TEXAS and HARRIS § <br> COUNTY HOSPITAL DISTRICT d/b/a § <br> HARRIS COUNTY HEALTH SYSTEMS, § <br>  ET. AL. § <br>  *Defendants* § | | NO. 4:23-CV-03198 |

**RULE 12 MOTION TO DISMISS AND ASSERTION OF
QUALIFIED IMMUNITY BY DEFENDANTS
GARRETT WOODS, PAULINO OLGUIN, AND WILLIAM RUSSELL**
==================================================================

MAY IT PLEASE THE COURT:

NOW COMES DEFENDANTS, GARRETT WOODS, PAULINO OLGUIN, AND WILLIAM RUSSELL, in their Individual Capacity ("DEFENDANTS") and file this Rule 12 Motion to Dismiss and Assertion of Qualified Immunity, and in support thereof DEFENDANTS would show the Court as follows:

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 1
I.   NATURE OF PROCEEDINGS ........................................................................... 2
II.  STATEMENT OF ISSUES PRESENTED .......................................................... 2
III. MOTION TO DISMISS......................................................................................... 3
    A.   Rule 12(b)(6) Motion to Dismiss................................................................ 3
    B.   Qualified Immunity..................................................................................... 5
II. ARGUMENT AND AUTHORITIES.................................................................... 7
    A.   Fourteenth Amendment Standard. .............................................................. 7
    B.   Plaintiffs Fail to Demonstrate Deliberate Indifference To a Serious Medical
         Need by Each Individual Defendant. .......................................................... 9

C.  Pleadings Do Not Overcome the Qualified Immunity Defense of Each Individual Defendant. .................................................................................................. 12

    1.  OFFICER GARRETT WOODS ................................................................. 13

    2.  OFFICER PAULINO OLGUIN................................................................. 13

    3.  OFFICER WILLIAM RUSSELL .............................................................. 14

D.  Legal Infirmities Pertaining to Sarah Borchgrevink as Representative of Ryan Shelton's' Estate Raised by Harris County and Harris Health Also Inure to Preclude Claims Against Individual Defendants Woods, Olguin and Russell. ..................... 15

CONCLUSION & PRAYER ........................................................................................ 16

==============================================================

# I.  NATURE OF PROCEEDINGS

1. Plaintiffs bring this case under 42 U.S.C. § 1983 for alleged violations of pre-trial detainee Matthew Ryan Shelton's Fourteenth Amendment Constitutional Rights. Plaintiffs claim detention officers failed to take Shelton to the medical clinic to obtain treatment for his Type 1 Diabetes and failed to observe him or to act when it should have been apparent that Shelton was suffering from a serious medical condition. Shelton died while in detention.

2. Defendants move for dismissal of the claims as Plaintiffs' allegations do not state a plausible claim that Defendants Woods, Olguin, and Russell individually demonstrated deliberate indifference to Shelton's right to medical care while housed in the Harris County Jail. Defendants further move for dismissal as the officers are entitled to qualified immunity and Plaintiffs' pleadings do not overcome that immunity.

# II.  STATEMENT OF ISSUES PRESENTED

3. Do Plaintiffs' allegations present a plausible claim against each Defendant sufficient to avoid dismissal under Rule 12(b)(6)?

4. Are Defendants Woods, Olguin, and Russell entitled to dismissal of this case based on their qualified immunity?

## III. MOTION TO DISMISS

### A. Rule 12(b)(6) Motion to Dismiss.

5. To survive a Rule 12 (b)(6) motion, the complaint must plead "enough facts to state a claim for relief that is plausible on its face."[1] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."[3] Rather, the court must be sure that the complaint alleges sufficient facts to move the claim "across the line from conceivable to plausible."[4] The plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[5] While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[6] "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to overcome a motion to dismiss."[7] Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face"

---

[1] *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).
[2] *Id.* quoting *Bell Atl. Corp. v Twombly*, 550 U.S.544, 556 (2007).
[3] *Id.*
[4] *Twombly*, 550 U.S. at 570.
[5] *Culbertson v. Lykos,* 790 F.3d 608, 616 (5th Cir. 2015).
[6] *Twombly*, 550 U.S. at 555.
[7] *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

Defendants Woods, Olguin and Russell's Rule 12 Motion to
Dismiss and Assertion of Qualified Immunity -3-

and "raise a right to relief above the speculative level."[8] Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges or immunities secured by the Constitution and laws of the United States.[9]

6.  Plaintiffs at best allege perfunctory and conclusory allegation against Officers Garrett Woods, Paulino Olguin and William Russell, contending, upon information and belief, that they (and others) violated Matthew Shelton's constitutional rights. They allege Officer Woods may have been told by Shelton that he was a Type 1 Diabetic and needed insulin but did not know how to submit a request for medical treatment. They allege Woods or other officers refused a nurse's instruction to take Shelton to the clinic. They allege that Officer Woods and several others were charged with observing detainees but "likely" did not perform the observation checks, despite the records showing he did so. They allege, without specific facts, that Woods or other officers likely falsified observation check records or allowed others to use his log in to CoreTrak.

7.  Similarly, Plaintiffs state vague and conclusory allegations against Officer Olguin. Plaintiff alleges Officer Olguin came on duty the evening of March 25, 2022 working the unit in which Shelton was housed. Plaintiffs allege that Olguin and other officers refused LVN Ogunsany's direction to escort Shelton to clinic and ignored Shelton's report that he needed insulin. Plaintiffs allege Olguin, or one of several others, falsely documented they checked on inmates when they did not, or logged in as another person to perform the checks. Plaintiffs contend if he had not falsified his checks, Olguin would have known

---

[8] *Twombly*, 550 U.S. at 555.
[9] *Lavidas v. Bradshaw*, 512 U.S. 107, 132 (1994).

Shelton was in obvious medical distress. Olguin is stated to have continued working in 2L the morning of March 27, 2022, working overtime until 7:19 a.m., but still failing to actually observe Shelton in his cell.

8.  Plaintiffs state the same conclusory allegations as to Officer Russell. They allege he, or one of a dozen others, were told by a nurse that Shelton needed to be taken to the clinic, but failed to do so. They allege he, along with several others, falsely documented observation checks or performed checks under another officer's log-in but failed to actually observe Shelton's condition.

9.  All of these allegations of "likely" behavior or that one or more officers acted or failed to act are no more than baseless speculation and only a possibility that these Officers violated Shelton's constitutional rights. Plaintiffs' claims against Officers Woods, Olguin and Russell should be dismissed.

**B.  Qualified Immunity.**

10.  Qualified immunity shields an officer from liability if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[10] In order to overcome qualified immunity, a plaintiff must show that the officer (1) violated a constitutional right and (2) that "the right at issue was 'clearly established' at the time of [the] alleged misconduct."[11] Courts have discretion to address either or both prongs.[12]

---

10 *Pearson v. Callahan*, 555 U.S. 223, 231, (2009).
11 *Id.* at 232 (quotation omitted).
12 *Id.* at 236; *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022).

11.     Once the qualified immunity defense is raised, the plaintiff possesses the burden of showing that the facts alleged demonstrate that the officer violated a constitutional right, and that the right was clearly established at the time of the violation.[13] This is a fact-specific inquiry to be made from the perspective of an objectively reasonable officer at the scene, rather than in hindsight.[14]

12.     Considering the Supreme Court's decision in Pearson v. Callahan, the courts are permitted to consider the question of whether a defendant is entitled to qualified immunity without first determining whether or not the plaintiff's constitutional rights were violated.[15] The Court is to decide if the conduct was objectively reasonable in light of clearly established law at the time of the incident.[16]

13.     "When properly applied, it [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."[17]  Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.[18]  This means that Plaintiffs must demonstrate the violation of a clearly established constitutional right as to each individual defendant. *See Rogers v Jarrett,* 63 F.4th 971, 974 (5th Cir. 2023) (involving prison inmate who suffered a head injury); see also *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(en banc)(per curiam); see also *Thompson v Upshur County*, 245 F.3d 447 (5th Cir. 2001)(addressing

---

13 *Pearson v. Callahan,* 555 U.S. 223, 236 (2009) (discussing the modified inquiry under *Saucier v. Katz,* 533 U.S. 194 (2001)).
14 *Graham v. Connor,* 490 U.S. 386 (1989).
15 *Pearson,* 555 U.S. at 236 (2009).
16 *Brown v. Callaghan,* 623 F.3d 249, 253 (5th Cir. 2010).
17 *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).
18 *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).

application of qualified immunity of state jail detention officers who allegedly should have known that an inmate's injuries were more serious than they appeared.)

14. As in the Eighth Amendment context, the deliberate indifference to a serious medical need is an extremely high standard to meet. *See Hare v City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996); *see also Rogers*, 63 F.4th at 976; and *Dyer v Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm). *See also Daniels v. Williams*, 474 U.S. 327 (1986) and *Davidson v. Cannon*, 474 U.S. 344 (1986)(negligence does not state a claim for relief or overcome qualified immunity).

## II. ARGUMENT AND AUTHORITIES

**A.     Fourteenth Amendment Standard.**

15. The constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996); *see also Bell v. Wolfish*, 441 U.S. 520 (1979). Significantly, Bell instructs that the State must distinguish between pretrial detainees and convicted felons in one crucial respect: The State cannot punish a pretrial detainee. *Id. at 535* ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). Since the State does punish convicted prisoners, but cannot punish pretrial detainees, a pretrial detainee's due process rights are said to be "at least as

great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, (1983).

16.  It is firmly settled in the Fifth Circuit that a due process claim could never be based on a jail official's negligent failure to provide either medical care or protection from harm. *Johnston v. Lucas*, 786 F.2d 1254 (5th Cir.1986), *Alberti v. Klevenhagen*, 790 F.2d 1220 (5th Cir.1986). *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182 (5th Cir.1986). The fundamental rule is that negligent inaction by a jail officer does not violate the due process rights of a person lawfully held in custody of the State. *See Davidson v. Cannon*, 474 U.S. 327, 348 (1986)("[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."); *Johnston,* 786 F.2d at 1259 (rejecting liability for negligent failure-to-protect); *Partridge,* 791 F.2d at 1187 (rejecting liability for negligent failure to provide medical care); *see also Daniels v. Williams,* 474 U.S. 327, 332 (1986). Relying on *Daniels* and *Davidson,* the Seventh Circuit has held that gross negligence will not suffice either:

> [T]he distinction between negligence and gross negligence does not respond to the due process clause's function, which is to control abuses of government power. A "gross" error is still only an error, and an error is not an abuse of power. Since an error by a government official is not unconstitutional, "it follows that 'gross negligence' is not a sufficient basis for liability."

*See Salazar v. City of Chicago,* 940 F.2d 233, 238 (7th Cir.1991) (quoting *Archie v. City of Racine,* 847 F.2d 1211, 1220 (7th Cir.1988) (en banc)).

17.  These cases demonstrate that the constitutional standard of conduct must step up from negligence—that it must be more than mere or even gross negligence. *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 645 (5th Cir. 1996). Plaintiffs fail to allege any facts that rise

above negligence. The alleged failure to observe an inmate, and failure to escort a prisoner to the clinic are not factual non-conclusory allegations of deliberate indifference despite Plaintiffs' repeated use of those words. Importantly, the jail healthcare providers were ultimately responsible for following up on Shelton's diabetic prescription and monitoring his blood glucose level. Officers Woods, Olguin and Russell were not alleged to have been capable of providing such treatment, only noticing that it had not been provided.

### B.  Plaintiffs Fail to Demonstrate Deliberate Indifference To a Serious Medical Need by Each Individual Defendant.

18.  Based on the pleadings, Plaintiffs have failed to state any plausible factual allegations of deliberate indifference or causation. As already stated, pretrial detainees have a right not to have their serious medical needs met with deliberate indifference.[19] A "serious medical need" exists when the need for treatment "is so apparent that even laymen would recognize that care is required."[20] For a plaintiff to succeed on a claim against an individual official for deliberate indifference of a serious medical need, they must show that "(1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference."[21] In the context of claims based on denial of adequate medical care demonstrating deliberate indifference to a serious medical need, there must be a pleading that prison officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard

---

[19] *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)
[20] *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).
[21] *Dyer*, 964 F.3d at 380 (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)).

for any serious medical needs.' " *Rogers v. Hierholzer*, 857 F. App'x 831, 833 (5th Cir. 2021) (per curiam) (quoting *Gobert*, 463 F.3d 9 at 346. "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.

19. In this case, Plaintiffs allege that on March 24, 2022, an LVN Ogunsanya told one of 17 other officers on that shift, that Shelton needed to be taken to the Medical Clinic. [Dkt. 72, para. 147-148] Plaintiffs further allege, on "information and belief", that Shelton informed Woods *or one of four other officers,* on March 25, 2022 that he was diabetic and needed insulin. [Dkt. 72, Para 169] They do not allege that Officers Woods, Olguin and Russell actually observed any signs of a serious medical condition but in fact, they allege they *failed to* observe Shelton at all. Plaintiffs also do not allege that either Officer actually drew the conclusion from any observation of Shelton that there was a substantial risk of serious harm to Shelton if they failed to take action. In fact, they plead that detention officers were not trained to spot symptoms of low or high blood glucose, diabetic ketoacidosis or need for insulin. [Dkt. 72, para. 113] Based on this pleading, they have failed to state a claim for deliberate indifference.

20. To establish a cause of action under Section 1983, the Plaintiff must allege and show facts reflecting the defendant's participation in the alleged wrong, specifying the personal involvement of each Defendant. *Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Keller*, 950 F.2d 290, 292 (5th Cir. 1992)). Because vicarious liability does not apply in §1983 actions, Plaintiffs must demonstrate facts that directly tie the

individually named Defendant into the alleged constitutional violation. *See Thompkins vs. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Further, when determining the conduct of individual Defendants, the conduct of each individual Defendant must be considered separately and independently. *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 395 (5th Cir. 2000); *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir. 1999). Plaintiff has failed to make allegations of specific actions of Officers Woods, Olguin and Russell that place the onus of a constitutional violation directly on each of them individually.

21. Plaintiff's pleadings are inadequate because they group individual Defendants together, vaguely asserting in many situations that "one or the other" of the individuals were supposed to take Shelton to the clinic, do observations checks; or failed to do observation checks. [Dkt. 72, para 169-177, 183-185, 189-192, 194-197, 202]. Grouping Defendants together without directly asserting the conduct of each specific Defendant taken or that was failed to have been taken is insufficient. Further, other than bare unsubstantiated allegations that Shelton informed some officers of his need for some kind of medical attention, Plaintiffs have failed to meet their pleading burden. Bare, unsubstantiated statements and conclusory allegations or legal conclusions masquerading as factual conclusions are not adequate to prevent dismissal. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)(internal citation omitted).

22. Plaintiffs pled that Officers Woods along with several others "failed or refused to stop at Mr. Shelton's cell to check on whether he was in medical distress. [Dkt. 72, para. 185]. Plaintiffs plead "[h]ad they done so they would have seen [that he was in serious medical distress]. [Dkt. 72, para. 186]. So according to these pleadings, neither Woods,

Olguin or Russell ever specifically witnessed Shelton's medical condition and then ignored it. [Dkt. 72 para. 195, 209, 223, 229, 238, 243, 261] According to this pleading, they at worst, violated a jail protocol. They did not deliberately ignore a serious medical need of which they had become personally aware.

23. Plaintiffs also do not show how failure to notice symptoms of this medical condition is a known violation of clearly established constitutional rights. *Pearson,* 555 U.S. at 236 (discussing the modified inquiry under *Saucier v. Katz,* 533 U.S. 194, 201). At most, they allege individuals were negligent or careless in carrying out their duties. For Rule 12 purposes, Plaintiffs have failed to state a claim for which relief can be granted under the Fourteenth Amendment against Officers Woods, Olguin and Russell; and their claims against Officers Woods, Olguin and Russell should be dismissed on this basis.

## C. Pleadings Do Not Overcome the Qualified Immunity Defense of Each Individual Defendant.

24. For all of the above reasons regarding the pleading defects as to a showing of a Fourteenth Amendment constitutional claim, the pleadings fail to overcome either Defendant Woods, Olguin and Russell's qualified immunity. Plaintiff's factual allegations as to Defendants Woods, Olguin and Russell fail to show that either officer violated a constitutional right to not have serious medical needs met with deliberate indifference and that "this right", based on pled facts, was clearly established' at the time of [the] alleged misconduct.

### 1.  OFFICER GARRETT WOODS

25. On March 25, 2022 Plaintiffs allege that Officer Wood or one of 16 other officers, was told by a nurse to take Shelton to the clinic but refused to do so. Plaintiffs further allege that day that four officers, including Woods, were to be observing Shelton and logging observation rounds into CoreTrak. [Dkt. 72, para. 174] Plaintiffs state that it is "likely" that no one actually observed Shelton that day. [Dkt. 72, para. 177] While Amanda Ruiz logged observation checks that day, Plaintiffs allege they may have been completed by Woods or three other officers and they may not have actually been completed and therefore there is no allegation that Woods knew of a serious medical need but ignored it. [Dkt. 72, para. 184-185, 187] Plaintiffs make similar allegations for March 26-27, 2022 stating that Observation checks logged in as completed by Woods were likely done by other officers or were not done at all and the officer did not actually observe Shelton. [Dkt. 72, para. 205-209, 239, 260-263]. Although Shelton allegedly told either Woods, or one of four other officers, that he was diabetic and needed insulin, and someone should have seen he was in medical distress no officer escorted him to the clinic. [Dkt. 72, para. 210-211] None of these allegations are that Woods knew of a serious medical need and intentionally ignored it.[22]

### 2.  OFFICER PAULINO OLGUIN

26. On March 25, 2022 Plaintiffs allege that Officer Wood or one of 16 other officers, was told by a nurse to take Shelton to the clinic but refused to do so. Plaintiffs further

---

[22] The Court should note that Plaintiffs' counsel took the deposition of Garrett Woods on 2/6/2024, months before Woods was later added as a party defendant. Woods' testimony does not support a claim of conscious or deliberate indifference to a serious medical need of Detainee Shelton by Woods.

allege that day, four officers, including Olguin, were to be observing Shelton and logging observation rounds into CoreTrak. [Dkt. 72, para. 174]  Plaintiffs state that it is "likely" that no one actually observed Shelton that day. [Dkt. 72, para. 177]  Plaintiffs allege that on March 25, 2022 evening shift Olguin and others took over observation duties for Shelton's pod. [Dkt. 72, para. 192]. Although Olguin along with Amber Bailey recorded thirteen observation checks that shift, it is alleged that "several rounds were intentionally and deliberately falsified" and no one actually observed Shelton. [Dkt. 72, para. 194-195] Plaintiffs further allege that Shelton may have told Olguin or one of four other officers that he was diabetic between March 25-26, 2022, but they do not state that Olguin was actually told or that he actually knew and ignored a serious medical need on those dates. [Dkt. 72, para. 197]   Plaintiffs make similar allegations for March 26-27, 2022 stating that Observation checks logged in as completed by Elizabeth Garcia or Timothy Owen may have been completed by Olguin, but Olguin is not alleged to actually have observed Shelton. [Dkt. 72, para. 219-223, 226-228, 235-238]. On March 27, 2022 Olguin is alleged to have logged in as himself for an observation check, but then Plaintiffs state he did not actually complete that check. [Dkt. 72, para. 241-243]  None of these allegations are that Olguin actually knew of a serious medical need and intentionally ignored it.

      **3.**     **OFFICER WILLIAM RUSSELL**

27. On March 25, 2022 Plaintiffs allege that Officer Russell or one of 16 other officers, was told by a nurse to take Shelton to the clinic but refused to do so.  [Dkt. 72, para. 174] Plaintiffs allege that on March 26, 2022, Observation checks logged in as completed by Elizabeth Garcia or Timothy Owen may have been completed by Russell but Russell is not

alleged to actually have observed Shelton. [Dkt. 72, para. 219-223]. On March 27, 2022 Russell is alleged to have logged in as himself for an observation check, but then Plaintiffs state he did not actually complete that check. [Dkt. 72, para. 229-230] None of these allegations are that Russell knew of a serious medical need and intentionally ignored it.

28.   Plaintiff's factual allegations as to Defendants Woods, Olguin and Russell fail to show that either officer violated a constitutional right to not have serious medical needs met with deliberate indifference and that "this right", based on pled facts, was clearly established' at the time of [the] alleged misconduct. These allegations do not demonstrate a waiver of qualified immunity.

**D.   Legal Infirmities Pertaining to Sarah Borchgrevink as Representative of Ryan Shelton's' Estate Raised by Harris County and Harris Health Also Inure to Preclude Claims Against Individual Defendants Woods, Olguin and Russell.**

29.   "Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir.2004); 42 U.S.C. § 1988(a). "Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." *Id.* (citing *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 390–91 (5th Cir.1992)); *Handley v. City of Seagoville, Tex.*, 798 F.Supp. 1267, 1269 (N.D.Tex.1992). Under the Texas Survival Statute, heirs, legal representatives, and the estate of the injured person may bring a survival action. Tex. Civ. Prac. & Rem. Code § 71.021(b). "Generally, only personal representatives of the estate are entitled to bring a personal injury action." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–50 (2005) (citing *Shepherd v. Ledford*, 962 S.W.2d 28, 31 (1998)).

30. Plaintiffs have alleged in their Amended Complaint that Sarah Borchgrevink is the independent administrator of Shelton's estate. Ms. Borchgrevink was issued Letters of Administration and appointed as the Independent Administrator of Shelton's estate on April 12, 2023. However, on December 18, 2023, Probate Court Number One (1) of Harris County, Texas, in Cause no. 512551, ordered, adjudged, and decreed that the Letters of Independent Administration issued to Sarah Borchgrevink were thereby revoked, whether delivered or not. The Court further ordered the Clerk to drop the cause from the Court's docket. *See Dkt. 78 Co-Defendant Harris Health System's Rule 12(b)(1) & )(6), Motion to Dismiss; see also Dkt. 78.1 Order Granting Independent Administration (Harris County Probate Court No. 1) and Dkt.78.2 Order Revoking Letter of Independent Administration and Drop Estate from Open Docket.*

31. Defendants Woods, Olguin and Russell therefore hereby join in and incorporate by reference the Rule 12 Motion to Dismiss filed by Co-Defendant Harris Health System. Sarah Borchgrevink therefore lacks legal authority to file this lawsuit on behalf of Matthew Shelton's estate. Ms. Borchgrevink lacks standing and capacity to file this lawsuit on behalf of Shelton's Estate and therefore the claim should be dismissed.

## CONCLUSION & PRAYER

Therefore, DEFENDANTS WOODS, OLGUIN AND RUSSELL, hereby respectfully requests that the Court grant this Rule 12 Motion to Dismiss based on one or more of the reasons specified above, including the assertion of Qualified Immunity by each individual DEFENDANT. In addition, the DEFENDANTS request that the Court further finds that the action is precluded against them based on Plaintiff Sarah Borchgrevink lack of standing to bring this action.

DEFENDANTS further request any other relief to which they are entitled, at law or in equity including dismissal of this action against them with prejudice.

SIGNED on the 6th day of SEPTEMBER 2024.

Respectfully submitted,

By: /s/Ricardo J. Navarro
RICARDO J. NAVARRO
State Bar No. 14829100
So. Dist. Id No. 5953
rjnavarro@rampagelaw.com

By: /s/ Kelly R. Albin
KELLY R. ALBIN
State Bar No. 24086079
So. Dist. Id No. 3792304
kralbin@rampagelaw.com

**DENTON NAVARRO RODRIGUEZ BERNAL SANTEE& ZECH, P.C.**
549 N. Egret Bay, Suite 200
League City, Texas 77573
Tel. 832.632.2102
Fax 832-632-2132

**COUNSEL FOR DEFENDANTS GARRETT WOODS, PAULINO OLGUIN, AND WILLIAM RUSSELL**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this document has been served on the persons or parties identified below in accordance with one or more of the recognized methods of service by the Federal Rules of Civil Procedure on the 6th day of SEPTEMBER 2024.

John T. Flood
John T. Flood, L.L.P.
Email: john@floodtriallawyers.com
COUNSEL FOR PLAINTIFFS

Jeffrey S. Edwards
The Edwards Law Firm
Email: jeff@edwards-law.com
COUNSEL FOR PLAINTIFFS

John R. Strawn, Jr.
Strawn Pickens LLP
Email: jstrawn@strawpickents.com
COUNSEL FOR HARRIS HEALTH SYSTSEMS

Gregory R. Burnett
Harris County Attorney's Office
Email: gregory.burnett@harriscoutytx.gov
COUNSEL FOR HARRIS COUNTY, TEXAS

Suzanne Bradley
Harris County Attorney's Office
Email: Suzanne.bradley@harriscountytx.gov
COUNSEL FOR HARRIS COUNTY DEFENDANTS

/s/ Ricardo J. Navarro
RICARDO J. NAVARRO