UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SARAH BORCHGREVINK, §<br>REPRESENTATIVE OF THE ESTATE OF §<br>MATTHEW RYAN SHELTON, DECEASED §<br>and MARIANNA RUTH THOMSON, §<br>statutory wrongful death beneficiary of §<br>MATTHEW RYAN SHELTON, DECEASED §<br>    Plaintiffs, §<br>§<br>vs. §<br>§<br>HARRIS COUNTY, TEXAS and HARRIS §<br>COUNTY HOSPITAL DISTRICT d/b/a §<br>HARRIS HEALTH SYSTEMS; DETENTION §<br>SHERIFF ED GONZALEZ; OFFICER §<br>CHARLEY LAUDER, DETENTION §<br>OFFICER ELIZABETH GARCIA; §<br>DETENTION OFFICER PAULINO OLGUIN; §<br>DETENTION OFFICER WILLIAM §<br>RUSSELL; DETENTION OFFICER §<br>GARRETT WOODS; DETENTION OFFICER §<br>TIMOTHY OWENS; DETENTION OFFICER §<br>KALIN STANFORD; DETENTION OFFICER §<br>BRAYAN SILVA; DETENTION OFFICER §<br>AMBER BAILEY; DETENTION OFFICER §<br>AMALIA RUIZ; DETENTION OFFICER §<br>JEREMIAH ADEBOLA; DETENTION §<br>OFFICER ALLYSON HURD; DETENTION §<br>OFFICER DENTRELL WOODS; §<br>DETENTION OFFICER KIMBERLY §<br>ROSSELL; DETENTION OFFICER MARVIN §<br>PERKINS; DETENTION OFFICER LONNIE §<br>BROOKS; SERGEANT ALEJANDRO §<br>NIETO; and SERGEANT BRYAN COLLINS §<br>    Defendants. § | CIVIL ACTION NO: 4:23-cv-3198 |

DEFENDANTS AMBER BAILEY, ALLYSON HURD,
DENTRELL WOODS, AND BRYAN COLLINS'S
MOTION TO DISMISS PLAINTIFF FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

I.    STATEMENT OF FACTS ...................................................................... 1

II.   STATEMENT OF ISSUES ..................................................................... 4

III.  SUMMARY OF ARGUMENT ................................................................ 5

IV.   STANDARDS ........................................................................................ 6

  A.  Standard for qualified immunity............................................................ 10

V.    ANALYSIS .......................................................................................... 11

  A.  Plaintiffs have not sufficiently pled deliberate indifference as to these four
defendants................................................................................................. 11

  B.  Qualified immunity covers these four officers......................................... 15

CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Williamson Cnty., Texas*, 2024 WL 3833303 (5th Cir. Aug. 15, 2024)...............6

*Anderson v. Creighton*, 483 U.S. 635 (1987) ....................................................15

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) .........................................................6, 7, 14, 16

*Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012) ................................................15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................6

*Bell v. Livingston*, 356 Fed. App'x 715 (5th Cir. 2009).......................................9, 18

*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010)..............................................10

*Brown v. Glossip*, 878 F.2d 871 (5th Cir. 1989) ................................................15

*Bruner-McMahon v. Jameson*, 566 F. App'x 628 (10th Cir. May 7, 2014).....................13

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995) .....................................7, 10

*Daniels v. Williams,* 474 U.S. 327 (1986) ........................................................8

*Davidson v. Cannon*, 474 U.S. 344 (1986) .......................................................8

*Delaughter v. Woodall*, 909 F.3d 130 (5th Cir. 2018)..........................................17

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) ...................7

*Dyer v. Houston*, 964 F.3d 374 (5th Cir. 2020) .........................................................17, 18

*Estate of Allison v. Wansley*, 524 F. App'x 963 (5th Cir. May 15, 2013) ..........................12

*Estate of Cheney v. Collier*, 560 F. App'x 271 (5th Cir. Mar. 24, 2014)..........................12

*Estate of Henson v. Wichita County, Texas*, 795 F.3d 456 (5th Cir. 2015).........................7

*Estate of Pollard v. Hood County, Texas*, 579 F. App'x 260 (5th Cir. 2014) ...................14

*Estelle v. Gamble*, 429 U.S. 97 (1976) ..............................................................8

*Farmer v. Brennan*, 511 U.S. 825 (1994) ........................................................................ 7, 8

*Fernandez Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir.1993) ......................... 7, 10

*Gobert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006) ................................................ 8, 9, 11, 17

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) ...................................................................... 6

*Gooley v. Mobil Oil Corp.*, 851 F.2d 513 (1st Cir.1988) ....................................................... 7

*Green v. Harris Cnty., Texas*, 2019 WL 2617429 (S.D. Tex. June 26, 2019) ............ passim

*Hare v. City of Corinth*, 135 F.3d 320 (5th Cir. 1998) ....................................................... 16

*Hare v. City of Corinth, Miss.*, 74 F.3d 633 (5th Cir. 1996) ................................................ 8

*Jacquez v. Procunier*, 801 F.2d 789 (5th Cir. 1986) ........................................................... 15

*Jones v. Lamar Cnty.*, 2022 WL 17175071 (E.D. Tex. Sept. 9, 2022) ................................. 5

*Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) ........................................ 10

*Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468 (5th Cir. 2014) ................................................ 9

*Kyles v. LeBlanc*, 2017 WL 4080474 (M.D. La. Aug. 10, 2017) ......................................... 8

*Lampton v. Diaz*, 639 F.3d 223 (5th Cir. 2011) .................................................................... 6

*Lewis v. Sec. of Pub. Safety and Corrections*, 870 F.3d 365 (5th Cir. 2017) ..................... 13

*Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258 (5th Cir. 2019) .............. 15

*Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983) ..................................................................... 9

*Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994) ............................................................. 16

*Mason v. Faul*, 929 F.3d 762 (5th Cir. 2019) ..................................................................... 10

*McLin v. Ard*, 866 F.3d 682 (5th Cir. 2017) ....................................................................... 16

*Meadours v. Ermel*, 483 F.3d 417 (5th Cir. 2007) ............................................................... 5

*Monnell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) ................................................. 9, 18

iv

*Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019) ........................................................ 10

*Mullenix v. Luna*, 136 S. Ct. 305 (2015)........................................................................ 15

*Pearson v. Callahan*, 555 U.S. 223 (2009)...................................................................... 15

*Self v. City of Mansfield, Texas*, 369 F. Supp. 3d 684 (N.D. Tex. 2019) ......................... 13

*Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022) .................................................................. 5

*Stewart v. Murphy*, 174 F.3d 530 (5th Cir. 1999) ........................................................... 17

*Thomas v. Carter*, 593 Fed. App'x 338 (5th Cir. 2014) .................................................... 8

*Thompson v. Upshur Cnty., TX,* 245 F.3d 447 (5th Cir. 2001)  ....................................... 17

*Trevino v. Hinz*, 751 F. App'x 551 (5th Cir. Nov. 27, 2018)............................................ 12

*Walker v. Upshaw*, 515 F. App'x 334 (5th Cir. 2013) ...................................................... 14

*Westfall v. Luna*, 903 F.3d 534 (5th Cir. 2018) ............................................................... 15

**Statutes**

42 U.S.C. § 1983 ....................................................................................................4, 6, 9, 18

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 5, 7, 14

**Other Authorities**

5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1216 at 156-159...............7

Defendants Amber Bailey, Allyson Hurd, Dentrell Woods[1] and Sgt. Bryan Collins (defendants), all sued individually for compensatory and punitive damages, file this joint motion to dismiss under Rule 12(b)(6), and they assert their qualified immunity.

## I.    STATEMENT OF FACTS

1.    Defendants Bailey, Hurd and Dentrell Woods are detention officers; Sgt. Collins was a supervisor at the time of Mr. Shelton's death.

2.    Plaintiffs broadly allege, mostly based on speculation, that these four defendants each intentionally and deliberately failed or refused to observe Matthew Shelton for signs of medical distress or to get him to care.  However, most of the allegations in the complaint appear to be against Defendant DO Charley Lauder and others, as outlined below.

3.    Mr. Shelton died on March 27, 2022 after approximately four days in the jail. Mr. Shelton, a type 1 diabetic, died of ketoacidosis, according to medical examiner. Para. 289.

4.    Upon admission to jail, he was transferred to the single bed cell on March 23, 2022, as part of COVID protocols.  Para. 109.  Her got his last insulin shot on March 23, 2022. Para. 122.

5.    Paragraphs 39-78, 83-88, 114-130; 134-143; 152-165 primarily make allegations regarding Mr. Shelton's medical care by Harris Health and its nurses and doctors.  Plaintiffs allege that the LVN with Harris Health (a separate entity from Harris County) did not give Mr. Shelton his shot because he was not on "the list."  Para. 118-123; see also, Para. 140. Plaintiffs allege Mr. Shelton was fed carb heavy meals. Para. 122.  There are no allegations

---

[1] There is another defendant detention officer with the same last name in this case: Garrett Woods.

that these four officers could give shots, place Mr. Shelton on "the list", or determine his diet.

6.      Mr. Shelton was given a white medical pass by an LVN on March 24, 2022.  He would need to be escorted to clinic because of COVID quarantine.  Para. 144.  Plaintiffs allege an unnamed detention officer was told by the LVN that Mr. Shelton needed to go to the clinic right away. Para. 146.  But no detention officer took Mr. Shelton to the clinic on May 24, 2022. Para. 147.  Plaintiffs allege that the unnamed officer is Defendant Charley Lauder.  Para. 148.

7.      Plaintiffs, alternately, speculate that it was one of the other named defendants.  Para. 148.  Plaintiffs then speculate that the unidentified defendant officer told all the other defendant officers and sergeants working at 1:55 a.m. on March 24, that LVN Ogunsany directed that Mr. Shelton needed to be taken to the clinic. Para. 149.

8.      Plaintiffs allege that the detention officers "intentionally and deliberately" ignored the nurse's instructions.  Para. 150. Plaintiffs also speculate that the detentions officers refused to tell Mr. Shelton how to make a "sick call" request.  Para. 173.

9.      Defendant Amber Bailey is first mentioned at para. 192 as working on March 25, 2002, during the shift that began at 6 p.m. There are no allegations she was working March 24. Plaintiffs allege observation logs were entered under DO Bailey's name by other defendants. They speculate that this was done to make it appear that she did the rounds. Para. 193-194.  They do not allege that the rounds were not otherwise done.

10.      Plaintiffs allege Bailey and others did not enter the unit because Harris County destroyed video of the checks.  It seems the allegation is that without the video tapes

Plaintiffs can allege no one went on the floor where Mr. Shelton was.  Plaintiffs do not allege the DOs destroyed the video tapes. This spoliation claim is as to Harris County. Para. 195.  Plaintiffs then speculate that this means the DOs generally refused to monitor Mr. Shelton.  Para. 195.  If they had monitored him, Plaintiffs speculate, they would have noted his fatigue, pain, flushing and rapid breath.  Para. 195.  They further speculate that Mr. Shelton told DO Bailey and others at least once between 6:47 p.m. on March 25 and 6:11 a.m. that he was diabetic, needed insulin and was sick. Para. 197. Alternately, they alleged if he did not, he was too sick.  Para. 198.

11.     Then Plaintiffs allege that on the morning of March 26, Defendants Hurd, Dentrell Woods and Sgt. Collins were on shift.  Plaintiffs speculate that Hurd and Dentrell Woods completed observation rounds logged in as Garrett Woods.  Plaintiffs allege the rounds were falsified to make it seem that Garrett Woods did them.  Para. 206-207.  Plaintiffs do not allege that the rounds were not otherwise done. They allege the rounds were done too quickly, including the supervisor round done by Sgt. Collins.  Para. 209.  Plaintiffs again allege "on information and belief" but without more that Mr. Shelton told each officer he was a diabetic, feeling ill and would die without insulin.  Para. 210.

12.     Plaintiffs then make similar allegations as to the remaining defendant officers (not the four represented here in this motion to dismiss) for March 26 in the nighttime hours and March 27's morning hours.  Para. 223-224; Para. 226-238; 239-246.

13.     Paragraphs 244-256, para. 258-263 are allegations against Defendant Lauder. Plaintiffs allege Lauder and a Harris Health nurse **again** denied Mr. Shelton insulin around

11:30 am on March 27 and did not look into Mr. Shelton's window.  There is video of this time frame.

14.     At 1:50 p.m. on March 27, Sgt. Collins entered a core track record of Mr. Shelton's cell.  Plaintiffs allege he walked by without looking at Mr. Shelton.  Plaintiffs allege that Mr. Shelton likely died sometime after 1 p.m. on March 27, Para.  264-268.

15.     At 3:40 p.m., DO Lauder entered Mr. Shelton's cell, and found him dead.  He was cold to the touch.  She did not call for help until much later.  Para. 270-273.  DO Garrett Woods went into the cell at 4:10 p.m., found Mr. Shelton dead, and went to get Sgt. Collins. Para.  277-278.

16.     Plaintiffs allege Sgt. Collins, Lauder and Garrett Woods forged a "red pass" and placed it in the cell.  They also allege a white pass with the initials CL was forged by Lauder.

17.     They then allege that the officers all intentionally refused to contact the clinic.  Para. 211.

18.     These four defendants, Collins, Hurd, Bailey and D. Woods, deny that they were intentionally or deliberately indifferent to Mr. Shelton's medical needs. The remaining paragraphs of the complaint deal with other defendants.

## II.     STATEMENT OF ISSUES

19.     The issues to be ruled upon by the Court include whether Plaintiffs, largely on speculative "facts", have shown in a viable Section 1983 constitutional claim against these four defendants, and whether the claim pleaded is sufficient to overcome the defense of qualified immunity. Importantly, qualified immunity must be individually analyzed for

each officer. *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (citing *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)); *Jones v. Lamar Cnty.*, No. 421CV00156SDJCAN, 2022 WL 17175071, at \*22 (E.D. Tex. Sept. 9, 2022), *report and recommendation adopted*, No. 4:21-CV-156-SDJ, 2022 WL 17170943 (E.D. Tex. Nov. 22, 2022).

20.      These four defendants incorporate the issues with the probate and Mr. Shelton's sister that have been raised by other defendant-officers, and will not separately address it. See DE 129, 131 and 132.

### III.      SUMMARY OF ARGUMENT

21.      Plaintiffs have not shown a constitutional violation and cannot overcome qualified immunity on these allegations.

22.      The only allegations as to DO Hurd and Dentrell Woods are wholly speculative claims that they did rounds for another officer.  For DO Bailey, they speculate someone else did her observation rounds, but do not allege the rounds were not otherwise done. For Sgt. Collins, Plaintiffs allege he did not look into Shelton's cell on March 27 in the afternoon that Shelton died, and they speculate that he forged a "red pass" placed it in the cell.  This is not enough to overcome qualified immunity or to show deliberate indifference. There are no allegations related to his supervisory liability.

23.      Under Rule 12(b)(6), Plaintiffs' claims against these four defendants must be dismissed with prejudice for failure to state a claim. First, they are entitled to qualified immunity.  Next, Plaintiffs have not plead how defendants' alleged actions, even for the purposes of this motion to dismiss, amount to more that negligence or even gross negligence under the case law.  Plaintiffs must show deliberate indifference, an even higher

standard.  And Plaintiffs have the sole burden to defeat qualified immunity; said another

way, plaintiffs must show a constitutional violation (they cannot based on these allegations)

and that it was clearly established at the time of Mr. Shelton's death that these four

defendants alleged actions or lack of actions amount to deliberate indifference in the case

law. They do not.

24.     It is clear from the face of Plaintiffs' pleadings that all claims must be dismissed as

a matter of law because Plaintiffs have failed to state a claim against them for which relief

is available under 42 U.S.C. § 1983.  They have not sufficiently alleged deliberate

indifference and fail to defeat qualified immunity.

## IV.    STANDARDS

25.     The standard of review for the grant of a motion to dismiss is *de novo*. *Acosta v.*

*Williamson Cnty., Texas*, No. 23-50777, 2024 WL 3833303, at *11 (5th Cir. Aug. 15,

2024), citing to *Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011).

26.     Rule 12 (b)(6) is designed to test whether the allegations of the complaint "state a

claim upon which relief can be granted." *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009).

Although detailed factual allegations are not necessary, plaintiff must furnish more than

"labels and conclusions" or mere speculation.

27.     Further, a plaintiff must plead "enough facts to state a claim to relief that is plausible

on its *face." Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal,*

556 U.S. 662, 678 (2009); *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009). In reviewing

a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court is **not required to accept as true conclusory statements** or legal conclusions. *Iqbal,* 556 U.S. at 678-79 (emphasis added)

28.     The complaint "must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn **that evidence on these material points will be introduced at trial.**" 5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1216 at 156-159 (footnote omitted). "[A] statement of facts that merely creates a suspicion that the pleader might have a right of action" is insufficient. *Id.* at 163 (footnote omitted). Critically, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief ..." 2A Moore's Federal Practice ¶ 12.07 [2.-5] at 12-91 (footnote omitted).

29.     This court is not required to "conjure up unpled allegations or construe elaborately arcane scripts to" save a complaint. *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988). Further, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993); *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

30.     The Supreme Court has held that the Eighth Amendment requires that "inmates receive adequate ... medical care." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Pre-trial detainees are entitled to the same under the Fourteenth Amendment. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Estate of Henson v. Wichita County, Texas*, 795 F.3d 456, 462 (5th Cir. 2015).

31.    A pre-trial detainee bringing a Fourteenth Amendment claim for deprivation of adequate medical care must show that appropriate care was denied, and that the denial constituted deliberate indifference to serious medical needs. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643-45 (5th Cir. 1996) (adopting the same "deliberate indifference" standard applied in eighth amendment claims involving inmates asserting deprival of adequate medical care); *Thomas v. Carter*, 593 Fed. App'x 338, 342 (5th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

32.    Deliberate indifference is "an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). See also, *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 650 (5ᵗʰ Cir. 1996)

33.    Importantly, and critical to this case, these detention officers had no access to Mr. Shelton's medical records and did not prescribe medicine or medically treat inmates in the jail, and there are no allegations otherwise. Deliberate indifference cannot be inferred from merely negligent or grossly negligent response to a substantial risk of harm.   *Daniels v. Williams,* 474 U.S. 327 (1986) and *Davidson v. Cannon*, 474 U.S. 344 (1986) (<u>negligence does not state a claim of relief to overcome qualified immunity</u>)(emphasis added).

34.    An official is deliberately indifferent only when he "<u>knows of and disregards an excessive risk to inmate health or safety</u>." *Farmer*, 511 U.S. at 837. He must both "know that [the inmate] faces a substantial risk of serious bodily harm" and "disregard that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 847).

35.     In addition, for a supervisory official, such as Sgt. Collins, to be liable under § 1983, the official must "be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be some causal connection between the actions of the official and the constitutional violation sought to be addressed." *Kyles v. LeBlanc*, No. 16-0399-SDD-EWD, 2017 WL 4080474 at *4 (M.D. La. Aug. 10, 2017) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). Allegations that an official, such as Sgt. Collins, is responsible for the actions of subordinate officers or co-employees under a theory of vicarious liability or *respondeat superior* is alone insufficient to state a claim under § 1983. *Id.* (citing *Ashcroft*, 556 U.S. at 676; *Monnell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Bell v. Livingston*, 356 Fed. App'x 715, 716-17 (5th Cir. 2009)). Here there are no allegations on how his supervision was deliberately indifferent, and at best, Plaintiffs are trying to raise respondeat superior, which they cannot.

36.     To be actionable, the allegations of the detention officers' conduct must demonstrate subjective awareness of a substantial risk of serious harm and a failure to take reasonable measures to abate this risk. The "deliberate indifference" standard, however, is not an obligation for government officials to comply with an "optimal standard of care." Rather, it is an obligation not to disregard any substantial health risk about which government officials <u>are actually aware</u>. Under *Gobert v. Caldwell,* 463 F.3d 339, 345 n. 12 (5th Cir.2006), "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." See *Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 482 (5th Cir. 2014).

37.    Application of these standards to this pleading show that Plaintiffs have not moved beyond speculation and conclusory allegations. *Montes,* 987 F.2d at 284; *Campbell,* 43 F.3d at 975.

**A.    Standard for qualified immunity.**

38.    Qualified immunity has two prongs.  The first question is whether the officer violated a constitutional right. The second is whether the right at issue was clearly established at the time of the alleged misconduct.  This court can decide one question or both.  *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quotation marks and citation omitted).

39.     The heaviest burden for plaintiffs, who have the burden to disprove qualified immunity, is under the second question, as precedent requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances ... was held to have violated the Constitution. While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (quotation marks and footnotes omitted). The upshot is that "[q]ualified immunity is justified unless *no* reasonable officer could have acted as [the named defendants] did here, or *every* reasonable officer faced with the same facts would *not* have" acted as they did.  *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (emphases in original); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper").

40.     Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Gobert v. Caldwell*, 463 F.3d 339, 345–52 (5th Cir. 2006).

41.     In determining whether an official enjoys immunity, the Fifth Circuit will ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known. *Gobert*, 463 F. 345-46.

42.     Qualified immunity must be analyzed as to each defendant.

## V.     ANALYSIS

**A.     Plaintiffs have not sufficiently pled deliberate indifference as to these four defendants.**

43.      Plaintiffs have not sufficiently alleged deliberate indifference to Mr. Shelton's medical needs, and they rely on conclusory statements and speculation. The core allegations against these four officers are these: on one shift, DO Hurd and Dentrell Woods face wholly speculative claims that they did rounds for another officer.  On another shift, for DO Bailey, they speculate someone else did her observation rounds, but do not allege the rounds were not otherwise done. For Sgt. Collins, Plaintiffs allege he did not look into Shelton's cell on March 27 in the afternoon that Shelton died, and they speculate that he forged a "red pass" placed it in the cell.

11

44.    Assuming the allegation that some types of rounds were done, this is not enough to overcome qualified immunity or to show deliberate indifference.

45.    First, the Fifth Circuit has previously rejected the argument, which Plaintiffs assert in this case, that a government employee should have known that an inmate or arrestee needed a doctor where the inmate or arrestee presents with ambiguous, non-descript symptoms that could mean anything from something minor to something more serious. *See, e.g.*, *Trevino v. Hinz*, 751 F. App'x 551, 555 (5th Cir. Nov. 27, 2018) (unpublished op.) (holding that "an officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference" where an arrestee was vomiting and acting like she was having a seizure and that, " 'as a matter of common sense, vomiting does not always indicate medical distress in the sense that it requires immediate medical attention' " (citation omitted)); *Estate of Cheney v. Collier*, 560 F. App'x 271, 274 (5th Cir. Mar. 24, 2014) (unpublished op.) (holding no deliberate indifference where nurse ignored inmate's flulike symptoms of paleness, body fatigue, chills, lack of appetite, and one or two instances of vomiting because such symptoms were consistent with a severe cold or flu and the nurse therefore was not aware of a substantial risk of serious harm until the inmate's vitals were dangerously abnormal, at which point she sought emergency treatment but the inmate died); *Estate of Allison v. Wansley*, 524 F. App'x 963, 972 (5th Cir. May 15, 2013) (unpublished op.) (affirming summary judgment on deliberate indifference where officers knew that arrestee was very intoxicated, had a history of drug abuse and suicide attempts, was unsteady with slurred speech, and defendants allowed her to "sleep it off" because they did not believe she was having a medical emergency); *Self v.*

*City of Mansfield, Texas*, 369 F. Supp. 3d 684, 699 (N.D. Tex. 2019) (holding that defendants were not deliberately indifferent to plaintiff's medical needs where, four hours before his death by drug-induced cardiac arrest, plaintiff had had a seizure, could not walk on his own, and was in and out of consciousness because his non-descript symptoms were mistaken for drunkenness rather than a drug overdose); *accord Bruner-McMahon v. Jameson*, 566 F. App'x 628, 634 (10th Cir. May 7, 2014) (unpublished op.) (affirming summary judgment against representatives of the estate of an inmate who died from complications from bacterial meningitis, where guards were aware that the inmate exhibited flu-like symptoms and was acting strangely but did not get him timely medical attention, holding that there was no evidence that any of the guards appreciated the risk of a serious or fatal medical condition and disregarded that risk). See also, *Green v. Harris Cnty., Texas,* No. CV H-16-893, 2019 WL 2617429, at *14 (S.D. Tex. June 26, 2019).

46.     Here, Plaintiffs have alleged that these four detention officers either did not do rounds or did the rounds for someone else.  Regardless, they allege that they would have noticed that Mr. Shelton would have exhibited symptoms such as "fatigue, pain, flushing and rapid breath."  Para. 195.  Plaintiffs also speculate that Mr. Shelton would have told the detention officers he was sick and had diabetes.

47.     While the *Green* case cite above was in the context of a summary judgment, the deliberate indifference analysis is instructive, even as we accept Shelton's allegations as true at this stage:

> Even if, for sake of argument, Malloy had not conducted the twice-hourly observations as required, "a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right." *Lewis*

*v. Sec. of Pub. Safety and Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) (citations omitted); *see also Walker v. Upshaw*, 515 F. App'x 334, 337 (5th Cir. 2013) (holding that the guards' failure to conduct the required fifteen-minute checks on a suicide watch inmate showed negligence but not deliberate indifference); *Estate of Pollard v. Hood County, Texas*, 579 F. App'x 260, 265 (5th Cir. 2014) (holding that the guards' failure to comply strictly with the fifteen-minute observation orders and to view and remove the laundry bag from a suicide-watch inmate's cell reflected possible negligence, but not deliberate indifference to the inmate's known suicide risk). At most, such a failure reflects negligence, not deliberate indifference. Plaintiffs do not raise a fact issue that Malloy was deliberately indifferent to Patrick's serious medical needs, and, therefore, do not show that Malloy violated Patrick's constitutional rights. Malloy is entitled to summary judgment on Plaintiffs' claims.

*Green v. Harris Cnty., Texas*, No. CV H-16-893, 2019 WL 2617429, at *15 (S.D. Tex. June 26, 2019).

48.    By analogy, the argument that these four officers, who were not medical professionals and had no access to Mr. Shelton's medical records, would know the symptoms of diabetic crisis or who would know that an inmate would need immediate medical intervention, or did not do timely or fulsome observations, is at best negligence, even gross negligence, and does not reflect deliberate indifference.  Thus, there is no constitutional violation. On these allegations against these officers, they must be dismissed. And this court can disregard the wholly speculative claim that Sgt. Collins forged a "red pass." In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court is **not required to accept as true conclusory statements** or legal conclusions. *Iqbal,* 556 U.S. at 678-79 (emphasis added).

49.    Without a constitutional violation, the first prong of qualified immunity fails for plaintiffs, as shown more fully below.

**B.    Qualified immunity covers these four officers.**

50.    "When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an 'obligation ... to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery.'" *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019) (alterations in original) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986)). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648. Courts are obligated to "implement a qualified immunity defense 'at the earliest possible stage of litigation,'" because "qualified immunity means immunity from having to stand trial, not simply immunity from monetary liability." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).

51.    In the *Green* case, Detention Officer Malloy asserted qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Clearly established means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal

reasonableness' of the action." *Id.* at 639 (citation omitted). "In evaluating a claim of qualified immunity, the district court is to make a determination of the objective reasonableness of the official's act as a matter of law." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994); *see also Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998) (citing *Mangieri* and explaining that the qualified immunity analysis requires a determination of whether the official's actions were objectively reasonable as a matter of law).

52.     Failing to plead allegations that do not show deliberate indifference dooms the claims against these four officers, and Plaintiffs have failed to overcome the assertion of qualified immunity on this basis alone. See *Green*, at \*16. The allegations against these four officers are thin,  and based on the cases cited above, they cannot show that their actions were unlawful in light of clearly established law at the time of Mr. Shelton's death. *See McLin v. Ard*, 866 F.3d 682, 695-96 (5th Cir. 2017) (holding that a plaintiff must show that the law so clearly and unambiguously prohibited the official's conduct such that *every* reasonable officer would have known that the officer's actions violated plaintiffs constitutional right). As discussed previously, Plaintiffs allege general physical symptoms that would not put an average officer, particularly these four, on notice that Matthew had a serious medical need. Plaintiffs do not point to clear precedent establishing that a guard acts unconstitutionally when he does not make an inmate go to the medical clinic where the inmate appears only to have general symptoms.  The allegations of forged passes are wholly speculation, and at contrary to Plaintiffs allegations, Matthew had the means to go to the clinic with the passes, and Plaintiffs plead that there was a white pass. Para. 144.

53.    A reasonable officer could have believed that these four officers actions were lawful under the totality of the circumstances here. Accordingly, Plaintiffs do not meet their burden to overcome the assertion of qualified immunity. Therefore, the officers are entitled to qualified immunity regarding Plaintiffs' claims.

54.    The Fifth Circuit agreed in 2020 that a district court correctly granted dismissal in the summary judgment context because the complaint failed to allege facts that "plausibly show the Paramedics' deliberate indifference." *Dyer v. Houston*, 964 F.3d 374, 380–81 (5th Cir. 2020).

55.    While our four defendants are not medical professionals, in the *Dyer* case, the plaintiffs alleged that the paramedics, having observed a head injury and drug induced behavior, should have provided additional care. The court wrote:

> At most, these are allegations that the Paramedics acted with negligence in not taking further steps to treat Graham after examining him. Our cases have consistently recognized, however, that "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 458–59 (citing *Hare*, 74 F.3d at 645); *see also*, *e.g.*, *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) (clarifying that "mere disagreement with one's medical treatment is insufficient to show deliberate indifference"); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (explaining that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference") (citations omitted). For instance, in *Stewart v. Murphy*, 174 F.3d 530, 533–534 (5th Cir. 1999), we held that a prison physician's failure, among other things, to discover earlier the ulcers that led to a prisoner's death "might constitute negligence, [but] not the requisite deliberate indifference." Finally, with particular salience here, we have long held that "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment,' " which fails to give rise to a deliberate-indifference claim. *Gobert*, 463 F.3d at 346 (quoting *Domino*, 239 F.3d at 756).

"Measured against these standards, we cannot say the complaint plausibly states a deliberate-indifference claim against the Paramedics. We therefore affirm the district court's dismissal of those claims."

*Dyer,* 964 F.3d at 380–81.

56.     Also, there are no allegations to hold Sgt. Collins liable as a supervisor and no allegations or case law that show the Plaintiffs have met their burden as to his qualified immunity as a supervisor or as an officer.  Again, allegations that an official, such as Sgt. Collins, is responsible for the actions of subordinate officers or co-employees under a theory of vicarious liability or *respondeat superior* is alone insufficient to state a claim under § 1983. *Ashcroft*, 556 U.S. at 676; *Monnell,* 436 U.S. at  691; *Bell,*  356 Fed. App'x at 716-17 (5th Cir. 2009)).

## CONCLUSION

Plaintiffs have sued DO Hurd, Bailey and Dentrell Woods, and Sgt. Collins, along with several other officers, but it is only on the thinnest of pleadings and based upon conclusory and speculative allegations.  Plaintiffs' allegations do not show deliberate indifference and do not overcome these four officers qualified immunity, especially in light of the cases cited in *Green*. They must be dismissed, and Plaintiffs should not be allowed to replead.

Date:  September 6, 2024.

Respectfully submitted,

**CHRISTIAN D. MENEFEE**
HARRIS COUNTY ATTORNEY

**JONATHAN G. C. FOMBONNE**

DEPUTY COUNTY ATTORNEY AND
FIRST ASSISTANT

**NATALIE G. DELUCA**
MANAGING COUNSEL,
DEFENSIVE LITIGATION, EMPLOYMENT,
& REAL ESTATE DIVISIONS

By:    */s/ Suzanne Bradley*
       **SUZANNE BRADLEY**
       Senior Assistant County Attorney
       ATTORNEY-IN-CHARGE
       State Bar No. 00793375
       Fed. Bar No. 24567
       Tel: (713) 274-5330 (direct)
       Suzanne.Bradley@harriscountytx.gov
       **VERONICA JONES**
       Assistant County Attorney
       ATTORNEY TO BE NOTICED
       State Bar No. 24097902
       Fed. Bar No. 3639763
       Tel: (713) 274-5181 (direct)
       veronica.jones@harriscountytx.gov
       **OFFICE OF THE HARRIS COUNTY ATTORNEY**
       1019 Congress
       Houston, Texas 77002
       **ATTORNEY FOR DEFENDANTS**
       **AMBER BAILEY, BRYAN COLLINS,**
       **ALYSON HURD, and DENTRELL WOODS**

## CERTIFICATE OF SERVICE

I certify that, pursuant to Federal Rules of Civil Procedure, a true copy of the instrument to which this Certificate is attached was duly served upon each party to this cause on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to the parties.

       */s/ Suzanne Bradley*
       SUZANNE BRADLEY