United States District Court
Southern District of Texas

**ENTERED**

May 14, 2025

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SARAH BORCHGREVINK, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-03198 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This civil rights action arises out of Matthew Shelton's death in Harris County Jail. Pending before the Court are Defendants Brayan Silva, Lonnie Brooks, Timothy Owens, Kalin Stanford, Almalia Ruiz, and Alejandro Nieto's Motion to Dismiss and Motion to Stay (Dkt. 132), Defendants Garrett Woods, Paulino Olguin, and William Russell's Motion to Dismiss and Assertion of Qualified Immunity (Dkt. 133), and Defendants Amber Bailey, Allyson Hurd, Dentrell Woods, and Bryan Collins's Motion to Dismiss (Dkt. 134). After carefully considering the motions, the response, the replies, the pleadings, and the applicable law, the Court **DENIES** the motions (Dkts. 132, 133, 134).

## I.    FACTUAL BACKGROUND

The background facts of Matthew Shelton's death are recited as alleged in the *Memorandum Opinion and Order* issued by the Court on March 6, 2025. (Dkt. 174). Here, Plaintiffs bring claims against Detention Officers Brayan Silva, Lonnie Brooks, Timothy Owens, Kalin Stanford, Almalia Ruiz, Alejandro Nieto, Garrett Woods, Paulino Olguin, William Russell, Amber Bailey, Allyson Hurd, Dentrell Woods, and Sergeant Bryan

Collins ("Detention Officers") in their individual capacities for violations of Matthew Shelton's ("Shelton") constitutional rights under 42 U.S.C. § 1983. (Dkt. 72 at pp. 126 – 129). Plaintiffs allege that the Detention Officers were deliberately indifferent to Shelton's serious medical needs. *Id*. The Detention Officers argue that they are protected by qualified immunity. *See* (Dkts. 132, 133, 134).

## II.    LEGAL STANDARDS AND APPLICABLE LAW

### A.    Rule 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations—when taken as true and viewed in the light most favorable to the plaintiff—do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

When considering a motion to dismiss, a district court generally may not go outside the pleadings. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). The Court's review is limited to the complaint, any documents attached to the complaint, any documents attached to the motion to dismiss that are central to the claim and referenced

by the complaint, and matters subject to judicial notice under Federal Rule of Evidence 201. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

### B.    Qualified Immunity

The motion to dismiss filed by the Detention Officers invokes qualified immunity. The doctrine of qualified immunity protects government officers from civil liability in their individual capacities if their conduct does not violate clearly established federal statutory or constitutional law. *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018). This inquiry requires a two-prong analysis, in which the court determines (1) whether the official violated a statutory or constitutional right, and (2) whether the unlawfulness of the official's conduct was "clearly established" at that time. *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Once raised as a defense, plaintiff has the burden to demonstrate that qualified immunity should be pierced. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). At the motion-to-dismiss stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). If "the pleadings are insufficient to overcome [qualified immunity], the district court must grant the motion to dismiss without the benefit of pre-dismissal discovery." *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022). Similarly, "where the pleadings are sufficient to

overcome [qualified immunity], the district court must deny the motion to dismiss without the benefit of pre-dismissal discovery." *Id*.

## III.    ANALYSIS

The Court finds that Plaintiffs' pleadings successfully overcome the Detention Officers' qualified immunity defenses. To pierce qualified immunity at this stage, the Plaintiffs must sufficiently allege that: (1) the Detention Officers each violated one of Shelton's statutory or constitutional rights, and (2) that the right was clearly established at the time of the challenged conduct. *Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020). The Court has discretion as to which of the two prongs it assesses first; however, "often the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a [federal] right at all." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021). The Court does so here.

### A.    Plaintiffs successfully plead that the Detention Officers each individually violated Shelton's rights.

The Court finds that Plaintiffs have sufficiently alleged violations of Shelton's rights under the Fourteenth Amendment. Plaintiffs' section 1983 claims invoke the protections of the Fourteenth Amendment because Shelton was a pretrial detainee. (Dkt. 72 at p. 16); *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). "The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)); *see also Austin v. Johnson,* 328 F.3d 204, 210 n.10 (5th Cir. 2003) ("Although

both the Eighth and Fourteenth Amendments protect the safety and bodily integrity of prisoners, the legal standards are virtually identical."). Violation of this right by deliberate indifference to serious illness or injury is actionable under section 1983. *Carter v. Reach*, 399 F. App'x 941, 942 (5th Cir. 2010).

A delay in providing or calling for medical care can constitute deliberate indifference where it results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 1191, 193 (5th Cir. 1993); *see also Cope*, 3 F.4th at 209 ("[P]romptly failing to call for emergency assistance when a detainee faces a known, serious medical emergency … constitutes unconstitutional conduct."). Plaintiffs can show deliberate indifference for each Detention Officer who (1) was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) actually "dr[ew] the inference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001). However, "deliberate indifference cannot be inferred merely from a negligent or even grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 458-59; *see also, e.g., Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) ("[M]ere disagreement with one's medical treatment is insufficient to show deliberate indifference."); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference.") (citations omitted).

Specifically, Plaintiffs may show deliberate indifference here by alleging that the Detention Officers refused to treat Shelton, ignored Shelton's complaints, intentionally

treated Shelton incorrectly, "or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985); *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006). Qualified immunity must be considered as to each defendant individually, and the Court does so below.[1] *Shefeik v. Busby*, 836 F. App'x 315, 317 n.1 (5th Cir. 2021).

  *i.*  Sgt. Collins

  The Court finds that Plaintiffs have alleged with sufficient specificity that Sergeant Collins ("Collins") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Collins:

- Was directly told by a nurse to take Shelton to the Clinic (Dkt. 72 at p. 27);

- Was directly told by Shelton himself that he had symptoms of diabetic ketoacidosis and needed insulin (*Id.* at p. 40); and

- Forged a red transit pass after discovering Shelton's corpse (*Id.* at p. 55).

  These pleadings support that Collins knew—from being told both by a nurse and Shelton himself—that Shelton was suffering from serious medical need. Under Fifth Circuit precedent, "[a] serious medical need is one for which treatment has been

---

[1] The Detention Officers argue that Plaintiffs' alternative pleadings as to the Detention Officers' alleged roles in Shelton's death are fatal to Plaintiffs' attempt to overcome qualified immunity. (Dtk. 132 at p. 14); (Dkt. 133 at p. 11); (Dkt. 158 at p. 2); (Dkt. 159 at pp. 5 – 6); (Dkt. 161 at pp. 3 – 5). The Court disagrees. "A party may state as many separate claims or defenses as it has, regardless of consistency." FED. R. CIV. P. 8(d)(3); *see also Leal v. McHugh*, 731 F.3d 405, 414 (5th Cir. 2013) ("[A]llegedly inconsistent factual allegations" are "not fatal" to plaintiff's complaint.); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003) ("Plaintiffs are permitted to plead in the alternative."). Accordingly, Plaintiffs' allegations need not be consistent under the federal rules so long as their different theories are plausible.

recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. Even if Collins had not been told by the nurse that Shelton needed to go to the Clinic (a recommended treatment for his high blood glucose), "a layman would recognize that care is required" when told by an "obviously weak, in pain, and confused" man with an "alarmingly flushed" face that he is diabetic and needs insulin. *See id*; (Dkt. 72 at p. 40). Additionally, Collins's forging of the red transit pass buoys the implication that Collins was aware of Shelton's medical need and understood that he should have issued Shelton a pass to the Clinic prior to Shelton's death. As such, the Court finds that Plaintiffs successfully plead both that Collins was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Collins actually drew the inference.

Further, the Court finds that Plaintiffs have sufficiently alleged that Collins met this inference with deliberate indifference. First, Plaintiffs allege that Collins refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that Collins refused to get medical attention for Shelton even after Shelton told Collins that he needed insulin. (*Id*. at p. 40). Finally, Plaintiffs allege that Collins refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at p. 40, pp. 51 – 52). As such, the Court finds that Collins refused to treat Shelton, ignored Shelton's complaints, and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs, respectively.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Collins was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully alleged that Collins violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

*ii.    Officer G. Woods*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer G. Woods ("G. Woods") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that G. Woods:

- Was directly told by a nurse to take Shelton to the Clinic (Dkt. 72 at p. 27);

- Was directly told by Shelton himself that he had symptoms of diabetic ketoacidosis and needed insulin (*Id*. at p. 32, p. 40); and

- Forged a red transit pass after discovering Shelton's corpse (*Id*. at p. 55).

These pleadings support that G. Woods knew—from being told both by a nurse and Shelton himself—that Shelton was suffering from serious medical need. Again, "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. Even if G. Woods had not been told by the nurse that Shelton needed to go to the Clinic (a recommended treatment for his high blood glucose), "a layman would recognize that care is required" when told by an "obviously weak, in pain, and confused" man with an "alarmingly flushed" face that he is diabetic and needs insulin. *See id*; (Dkt. 72 at p. 40).

Additionally, G. Woods's forging of the red transit pass buoys the implication that G. Woods was aware of Shelton's medical need and understood that he should have issued Shelton a pass to the Clinic prior to his death. As such, the Court finds that Plaintiffs successfully plead both that G. Woods was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that G. Woods actually drew the inference.

Further, the Court finds that Plaintiffs have sufficiently alleged that G. Woods met this inference with deliberate indifference. First, Plaintiffs allege that G. Woods refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that G. Woods refused to get medical attention for Shelton even after Shelton told G. Woods that he needed insulin. (*Id*. at p. 32, p. 40). Finally, Plaintiffs allege that G. Woods refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at pp. 33 – 35, p. 50). As such, the Court finds that G. Woods refused to treat Shelton, ignored Shelton's complaints, and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs, respectively.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, G. Woods was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully alleged that G. Woods violated Shelton's constitutional rights,

and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

### iii. *Officer Brooks*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer Brooks ("Brooks") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Brooks:

- Was directly told by a nurse to take Shelton to the Clinic (Dkt. 72 at p. 27);

- Was directly told by Shelton himself that he had symptoms of diabetic ketoacidosis and needed insulin (*Id*. at p. 32); and

- Issued Shelton a red transit pass to the clinic (*Id*. at p. 56).

These pleadings support that Brooks knew—from being told both by a nurse and Shelton himself—that Shelton was suffering from serious medical need. Even if Brooks had not been told by the nurse that Shelton needed to go to the Clinic (a recommended treatment for his high blood glucose), "a layman would recognize that care is required" when told by a man with "a red and flushed face" who was suffering with "labored breathing" that he is diabetic and needs insulin. *See Gobert*, 463 F.3d at 345 n.12; (Dkt. 72 at p. 32). Additionally, Brooks's issuing of the red transit pass to Shelton clearly demonstrates that Brooks understood Shelton needed to receive care in the Clinic. As such, the Court finds that Plaintiffs successfully plead both that Brooks was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Brooks actually drew the inference.

Further, the Court finds that Plaintiffs have sufficiently alleged that Brooks met this inference with deliberate indifference. First, Plaintiffs allege that Brooks refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that Brooks refused to get medical attention for Shelton after Shelton told Brooks that he needed insulin—and after Brooks himself issued Shelton a red transit pass to receive medical care in the Clinic. (*Id*. at p. 32, p. 56). Finally, Plaintiffs allege that Brooks refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at pp. 33 – 35). As such, the Court finds that Brooks refused to treat Shelton, ignored Shelton's complaints, and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs, respectively.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Brooks was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully alleged that Brooks violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

iv.    *Officer Ruiz*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer Ruiz ("Ruiz") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Ruiz:

- Was directly told by a nurse to take Shelton to the Clinic (Dkt. 72 at p. 27);

- Was directly told by Shelton himself that he had symptoms of diabetic ketoacidosis and needed insulin (*Id*. at p. 32);

- Observed that Shelton had skipped meals (*Id.* at p. 34); and

- Issued Shelton a red transit pass to the clinic (*Id.* at p. 56).

These pleadings support that Ruiz knew—from being told both by a nurse and Shelton himself—that Shelton was suffering from serious medical need. Even if Ruiz had not been told by the nurse that Shelton needed to go to the Clinic (a recommended treatment for his high blood glucose), "a layman would recognize that care is required" when a Type 1 diabetic skips meals. *See Gobert*, 463 F.3d at 345 n.12. Additionally, Ruiz's issuing of the red transit pass to Shelton clearly demonstrates that Ruiz was aware of Shelton's medical need and understood Shelton needed to receive care in the Clinic. As such, the Court finds that Plaintiffs successfully plead both that Ruiz was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Ruiz actually drew the inference.

Further, the Court finds that Plaintiffs have sufficiently alleged that Ruiz met this inference with deliberate indifference. First, Plaintiffs allege that Ruiz refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs

allege that Ruiz refused to get medical attention for Shelton after Shelton told Ruiz that he needed insulin—and after Ruiz himself issued Shelton a red transit pass to receive medical care in the Clinic. (*Id*. at p. 32, p. 56). Finally, Plaintiffs allege that Ruiz refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at pp. 33 – 35). As such, the Court finds that Ruiz refused to treat Shelton, ignored Shelton's complaints, and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs, respectively.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Ruiz was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully alleged that Ruiz violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

### v.    *Officer Silva*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer Silva ("Silva") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Silva was told by a nurse to take Shelton to the Clinic and was told by Shelton that Shelton "was a Type 1 diabetic, needed insulin, was feeling ill, and would die without insulin." (Dkt. 72 at p. 27, p. 40).

These allegations demonstrate that Silva was directly told about a recommended treatment. Consequently, Silva knew that Shelton was suffering from a serious medical

need. *See Gobert*, 463 F.3d at 345 n.12 (A "serious medical need is one for which treatment has been recommended."). Further, Shelton himself told Silva that he was a diabetic and needed insulin—circumstances under which even "a layman would recognize that care is required." *Id*. Thus, the Court finds that Plaintiffs have sufficiently pled both that Silva was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Silva actually drew the inference.

Further, the Court finds that Plaintiffs have sufficiently alleged that Silva met this inference with deliberate indifference. Plaintiffs allege that Silva refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that Silva refused to get medical attention for Shelton even after Shelton told Silva that he needed insulin. (*Id*. at p. 40). Finally, Plaintiffs allege that Silva refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at pp. 39 - 40). As such, the Court finds that Silva refused to treat Shelton, ignored Shelton's complaints, and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs, respectively.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Silva was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully alleged that Silva violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

###### vi.    *Officer D. Woods*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer D. Woods ("D. Woods") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that D. Woods was told by a nurse to take Shelton to the Clinic and was told by Shelton that Shelton "was a Type 1 diabetic, needed insulin, was feeling ill, and would die without insulin." (Dkt. 72 at p. 27, p. 40).

These allegations demonstrate that D. Woods was directly told about a recommended treatment. Consequently, D. Woods knew that Shelton was suffering from a serious medical need. *See Gobert*, 463 F.3d at 345 n.12 (A "serious medical need is one for which treatment has been recommended."). Further, Shelton himself told D. Woods that he was a diabetic and needed insulin—circumstances under which even "a layman would recognize that care is required." *Id*. Thus, the Court finds that Plaintiffs have sufficiently pled both that D. Woods was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that D. Woods actually drew the inference.

Further, the Court finds that Plaintiffs have sufficiently alleged that D. Woods met this inference with deliberate indifference. Plaintiffs allege that D. Woods refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that D. Woods refused to get medical attention for Shelton even after Shelton told D. Woods that he needed insulin. (*Id*. at p. 40). Finally, Plaintiffs allege that D. Woods refused to monitor Shelton and instead fabricated checks on the log, despite knowing that

Shelton needed medical attention. (*Id*. at pp. 39 - 40). As such, the Court finds that D. Woods refused to treat Shelton, ignored Shelton's complaints, and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs, respectively.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, D. Woods was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully alleged that D. Woods violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

### vii.    *Officer Hurd*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer Hurd ("Hurd") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Hurd was told by a nurse to take Shelton to the Clinic and was told by Shelton that Shelton "was a Type 1 diabetic, needed insulin, was feeling ill, and would die without insulin." (Dkt. 72 at p. 27, p. 40).

These allegations demonstrate that Hurd was directly told about a recommended treatment. Consequently, Hurd knew that Shelton was suffering from a serious medical need. *See Gobert*, 463 F.3d at 345 n.12 (A "serious medical need is one for which treatment has been recommended."). Further, Shelton himself told Hurd that he was a diabetic and needed insulin—circumstances under which even "a layman would recognize that care is

required." *Id*. Thus, the Court finds that Plaintiffs have sufficiently pled both that Hurd was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Hurd actually drew the inference.

Further, the Court finds that Plaintiffs have sufficiently alleged that Hurd met this inference with deliberate indifference. Plaintiffs allege that Hurd refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that Hurd refused to get medical attention for Shelton even after Shelton told Hurd that he needed insulin. (*Id*. at p. 40). Finally, Plaintiffs allege that Hurd refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at pp. 39 - 40). As such, the Court finds that Hurd refused to treat Shelton, ignored Shelton's complaints, and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs, respectively.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Hurd was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully alleged that Hurd violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

viii.    *Officer Olguin*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer Olguin ("Olguin") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Olguin was told by a nurse to take Shelton to the Clinic and was told by Shelton that Shelton "was a Type 1 diabetic, was sick, and would die without insulin." (Dkt. 72 at p. 27, p. 37).

These allegations demonstrate that Olguin was directly told about a recommended treatment. Consequently, Olguin knew that Shelton was suffering from a serious medical need. *See Gobert*, 463 F.3d at 345 n.12 (A "serious medical need is one for which treatment has been recommended."). Further, Shelton himself told Olguin that he was a diabetic and needed insulin—circumstances under which even "a layman would recognize that care is required." *Id*. Thus, the Court finds that Plaintiffs have sufficiently pled both that Olguin was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Olguin actually drew the inference.

Further, the Court finds that Plaintiffs have sufficiently alleged that Olguin met this inference with deliberate indifference. Plaintiffs allege that Olguin refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that Olguin refused to get medical attention for Shelton even after Shelton told Olguin that he needed insulin. (*Id*. at p. 37). Finally, Plaintiffs allege that Olguin refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at p. 37, pp. 42 – 43, pp. 45 - 47). As such, the Court finds that

Olguin refused to treat Shelton, ignored Shelton's complaints, and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs, respectively.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Olguin was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully alleged that Olguin violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

  ix. *Officer Russell*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer Russell ("Russell") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Russell was directly told by a nurse to take Shelton to the Clinic. (Dkt. 72 at p. 27). As with the above officers, this allegation demonstrates that Russell was directly told about a recommended treatment. Consequently, Russell knew that Shelton was suffering from a serious medical need. *See Gobert*, 463 F.3d at 345 n.12 (A "serious medical need is one for which treatment has been recommended."). Thus, the Court finds that Plaintiffs have sufficiently pled both that Russell was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Russell actually drew the inference.

Further, the Court finds that Plaintiffs have alleged that Russell met this inference with deliberate indifference. First, Plaintiffs allege that Russell refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that Russell refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id.* at pp. 42 – 44). As such, the Court finds that Russell both refused to treat Shelton and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Russell was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully pled that Russell violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

x.    *Officer Bailey*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer Bailey ("Bailey") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Bailey was directly told by a nurse to take Shelton to the Clinic. (Dkt. 72 at p. 27). As with the above officers, this allegation demonstrates that Bailey was directly told about a recommended treatment. Consequently, Bailey knew that Shelton was suffering from a serious medical need. *See Gobert*, 463 F.3d at 345 n.12 (A "serious medical need is one for which treatment has been recommended."). Thus, the

Court finds that Plaintiffs have sufficiently pled both that Bailey was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Bailey actually drew the inference.

Further, the Court finds that Plaintiffs have alleged that Bailey met this inference with deliberate indifference. First, Plaintiffs allege that Bailey refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that Bailey refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at p. 37). As such, the Court finds that Bailey both refused to treat Shelton and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Bailey was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully pled that Bailey violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

### xi.    *Officer Owens*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer Owens ("Owens") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Owens was directly told by a nurse to take Shelton to the Clinic. (Dkt. 72 at p. 27). As with the above officers, this allegation demonstrates that

Owens was directly told about a recommended treatment. Consequently, Owens knew that Shelton was suffering from a serious medical need. *See Gobert*, 463 F.3d at 345 n.12 (A "serious medical need is one for which treatment has been recommended."). Thus, the Court finds that Plaintiffs have sufficiently pled both that Owens was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Owens actually drew the inference.

Further, the Court finds that Plaintiffs have alleged that Owens met this inference with deliberate indifference. First, Plaintiffs allege that Owens refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that Owens refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at pp. 42 - 45). As such, the Court finds that Owens both refused to treat Shelton and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Owens was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully pled that Owens violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

xii.    *Officer Stanford*

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer Stanford ("Stanford") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Stanford was directly told by a nurse to take Shelton to the Clinic. (Dkt. 72 at p. 27). As with the above officers, this allegation demonstrates that Stanford was directly told about a recommended treatment. Consequently, Stanford knew that Shelton was suffering from a serious medical need. *See Gobert*, 463 F.3d at 345 n.12 (A "serious medical need is one for which treatment has been recommended."). Thus, the Court finds that Plaintiffs have sufficiently pled both that Stanford was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Stanford actually drew the inference.

Further, the Court finds that Plaintiffs have alleged that Stanford met this inference with deliberate indifference. First, Plaintiffs allege that Stanford refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that Stanford refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at pp. 42 - 45). As such, the Court finds that Stanford both refused to treat Shelton and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Stanford was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that

Plaintiffs have successfully pled that Stanford violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

### xiii.    Officer Nieto

The Court finds that Plaintiffs have alleged with sufficient specificity that Officer Nieto ("Nieto") acted with deliberate indifference to Shelton's serious medical needs. In particular, Plaintiffs allege that Nieto was directly told by a nurse to take Shelton to the Clinic. (Dkt. 72 at p. 27). As with the above officers, this allegation demonstrates that Nieto was directly told about a recommended treatment. Consequently, Nieto knew that Shelton was suffering from a serious medical need. *See Gobert*, 463 F.3d at 345 n.12 (A "serious medical need is one for which treatment has been recommended."). Thus, the Court finds that Plaintiffs have sufficiently pled both that Nieto was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Shelton existed and that Nieto actually drew the inference.

Further, the Court finds that Plaintiffs have alleged that Nieto met this inference with deliberate indifference. First, Plaintiffs allege that Nieto refused to take Shelton to the Clinic after being told to do so by a nurse. (Dkt. 72 at p. 28). Next, Plaintiffs allege that Nieto refused to monitor Shelton and instead fabricated checks on the log, despite knowing that Shelton needed medical attention. (*Id*. at p. 45). As such, the Court finds that Nieto both refused to treat Shelton and engaged in similar conduct that would clearly evince a wanton disregard for Shelton's serious medical needs.

These delays in providing medical care resulted in Shelton's death, an obvious substantial harm. As such, Nieto was deliberately indifferent to Shelton's serious medical needs in violation of the Fourteenth Amendment. Accordingly, the Court finds that Plaintiffs have successfully pled that Nieto violated Shelton's constitutional rights, and the Court holds that the first prong of the requisite analysis to pierce qualified immunity is satisfied.

**B.    Shelton's rights were clearly established at the time of the violation.**

The Court finds that Shelton's rights were clearly established at the time of the violation. To overcome qualified immunity, Plaintiffs must adequately plead that the Detention Officers' "conduct was objectively [un]reasonable in light of clearly established law." *Thompson*, 245 F.3d at 457. In the Fifth Circuit, the law is "clearly established" only where pre-existing law dictates "the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in these circumstances." *Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012). Thus, even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity unless "all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights." *Carroll v. Ellington,* 800 F. 3d 154, 169 (5th Cir. 2015). The Court finds that Plaintiffs successfully plead such a case here.

When attempting to show that a right was clearly established at the time of the violation, "[i]t is the plaintiff's burden to find a case in his favor that does not define the

law at a high level of generality." *Vann v. City of Southaven, Mississippi*, 884 F.3d 307, 310 (5th Cir. 2018) (quotation marks omitted). The inquiry "must be undertaken in light of the specific context of the particular case, not as a broad general proposition." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (brackets and ellipsis omitted). "Although qualified immunity does not require a case in point, existing precedent must have placed the statutory or constitutional question beyond debate[,]" such that "every reasonable official would understand that what she is doing violates that right." *Id*. (brackets and quotation marks omitted).

The Detention Officers concede that Shelton had the right not to have his serious medical needs met with deliberate indifference. (Dkt. 132 at p. 12); (Dkt. 133 at p. 9); (Dkt. 134 at p. 13). Further, since at least 2006, the Fifth Circuit has recognized that a delay in medical care is a constitutional violation where there has been deliberate indifference that results in substantial harm. *Easter*, 467 F.3d at 464.[2] Specifically, the Fifth Circuit has recognized a violation of a "clearly established" right where an official refused to treat a detainee, ignored his complaints, intentionally treated him incorrectly, or "engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Rogers v. Jarrett*, 63 F.4th 971, 978 (5th Cir. 2023) (citing *Sims v. Griffin*, 35 F.4th 945, 951 (5th Cir. 2022) (quoting *Easter*, 467 F.3d at 465)).

The Court finds that Plaintiffs satisfy their burden to produce a relevant pre-existing case. Specifically, Plaintiffs look to *Easter* and *Domino*, arguing that these two cases,

---

[2] Again, the standards for a pretrial detainee under the Fourteenth Amendment and a prisoner under the Eight Amendment are the same. *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019).

among others, work to demonstrate that Shelton's right was clearly established at the time of his violation. (Dkt. 153 at p. 13); *see Easter*, 467 F.3d at 465; *Domino*, 239 F.3d at 755. The Court is persuaded by this argument.

The Fifth Circuit has held that the rule articulated in *Easter* clearly establishes what behavior violates a prisoner's rights. *Sims*, 35 F.4th at 952 (finding officers liable for a constitutional violation where they knew a prisoner has swallowed a bag full of drugs, vomited multiple times, screamed for help, pleaded to go to the hospital, and steadily deteriorated since his arrival at the jail).[3] The Court finds that Plaintiffs' pleadings contain facts similar enough to those in *Easter* that "it would be clear to a reasonable officer that [the Detention Officers'] conduct was unlawful in the situation [they] confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The *Easter* court, considering *Domino*, explained: "Taking Easter's allegations as true, … [the official] knew that Easter (1) had a heart condition, (2) was experiencing severe chest pain, and (3) did not have his prescribed heart medication. … Therefore, it can be inferred from the circumstances that [the official] was subjectively aware of a substantial risk of harm to Easter's health." *Easter*, 467 F.3d at 463. Similarly, the Detention Officers here allegedly knew that Shelton had diabetes, knew he was experiencing symptoms of

---

[3] The Court recognizes that its analysis of Shelton's rights under this prong "is governed by law as it was clearly established at the time of conduct in question." *Springer v. Rekoff*, No. 3:14-CV-300, 2017 U.S. Dist. LEXIS 73014, at *9 (S.D. Tex. May 12, 2017) (citing *Petta v. Rivera*, 143 F.3d 895, 899-900 (5th Cir. 1998)). Further, the Court acknowledges that *Sims* was decided a few months after Shelton's alleged violation and is therefore inappropriate for consideration. *See Sims*, 35 F.4th at 951. However, the right acknowledged by the Fifth Circuit in *Sims* was established in *Easter* in 2006—nearly sixteen years before Shelton's violation. *Id*.

ketoacidosis, and knew he did not have his insulin. As the Fifth Circuit determined with respect to the officials in *Easter*, the Court finds that the failure of the Detention Officers to provide treatment options despite their subjective awareness renders their conduct "not objectively reasonable in light of clearly established law." *Id*.

Accordingly, the Detention Officers' conduct was such that all reasonable officers in their circumstances would have then known that their conduct violated Shelton's rights, and the Court holds that Shelton's rights were clearly established at the time of the Detention Officers' alleged violation.

## IV.    CONCLUSION

The Court finds that Plaintiffs allege with the requisite specificity that the Detention Officers each violated Shelton's clearly established constitutional rights under 42 U.S.C. § 1983. Accordingly, the Court holds that Plaintiffs' pleadings successfully overcome the defense of qualified immunity proffered by the Detention Officers, and the Court **DENIES** the Motions to Dismiss. (Dkts. 132, 133, 134).[4]

SIGNED at Houston, Texas on May 14, 2025.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

---

[4] To the extent that the Detention Officers seek a Rule 12(b)(1) motion to dismiss based on the argument that Plaintiff Borchgrevink does not have standing to bring these claims, the Court **DENIES** such a motion. As the Court previously held, Plaintiff Borchgrevink has standing to bring claims as the independent administrator of Mr. Shelton's estate. (Dkt. 167); *see Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845 (Tex. 2005) (plaintiff is able to remedy defective capacity to relate back to timely original petition on behalf of estate).