United States District Court
Southern District of Texas

**ENTERED**

September 30, 2025

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SARAH BORCHGREVINK, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-03198 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This civil rights action arises out of Matthew Shelton's death in Harris County Jail. Pending before the Court is Defendant Ed Gonzalez's Motion to Dismiss (Dkt. 137).[1] After careful consideration of the briefing and the applicable law, the Court **DENIES** the motion (Dkt. 137).

## I.    FACTUAL BACKGROUND

The background facts of Matthew Shelton's death are recited as alleged in the *Memorandum Opinion and Order* issued by the Court on March 6, 2025. (Dkt. 174).  Here, Plaintiffs bring a claim under 42 U.S.C. § 1983 against Defendant Sheriff Ed Gonzalez ("Gonzalez") in his individual capacity[2] for alleged violations of Shelton's constitutional

---

[1] The Court acknowledges that the motion was filed after the applicable deadline. However, because Plaintiffs had adequate time to respond and have not demonstrated any resulting prejudice, the Court will consider the motion on the merits. *See* FED. R. CIV. P. 6(b).

[2] "Plaintiffs did not bring claims against [Sheriff Gonzalez] in his official capacity, as these would have been duplicative of their claims against the County." (Dkt. 166 at p. 10).

rights.[3] (Dkt. 72 at p. 119). Gonzalez asserts that Plaintiffs have failed to state a claim and that any stated claim is barred by qualified immunity. (Dkt. 137). Plaintiffs argue they have sufficiently alleged both a conditions-of-confinement case and an episodic-acts-and-omissions case against Gonzalez. (Dkt. 166).

## II.    LEGAL STANDARDS AND APPLICABLE LAW

### A.    Rule 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations—when taken as true and viewed in the light most favorable to the plaintiff—do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

---

[3] Plaintiffs also bring a claim for denial of access to courts under section 1983. (Dkt. 72 at p. 125). The Court has previously held that Plaintiffs' identical claim against Defendant Harris County is insufficient. (Dkt. 167 at pp. 2 – 3). For the same reasons, the Court finds that Plaintiffs have not successfully pled a claim against Gonzalez. However, the Court's ruling on this claim does not preclude any motions for sanctions based upon spoliation of evidence or other sanctions regarding discovery available in civil suits. The Court only holds that Plaintiffs cannot bring a separate claim for the denial of access to courts at this time.

When considering a motion to dismiss, a district court generally may not go outside the pleadings. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). The Court's review is limited to the complaint, any documents attached to the complaint, any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint, and matters subject to judicial notice under Federal Rule of Evidence 201. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

### B.    Qualified Immunity

The motion to dismiss filed by Gonzalez invokes qualified immunity. The doctrine of qualified immunity protects government officers from civil liability in their individual capacities if their conduct does not violate clearly established federal statutory or constitutional law. *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018). This inquiry requires a two-prong analysis, in which the court determines (1) whether the official violated a statutory or constitutional right, and (2) whether the unlawfulness of the official's conduct was "clearly established" at that time. *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Once raised as a defense, plaintiff has the burden to demonstrate that qualified immunity should be pierced. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). At the motion-to-dismiss stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity

defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). If "the pleadings are insufficient to overcome [qualified immunity], the district court must grant the motion to dismiss without the benefit of pre-dismissal discovery." *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022). Similarly, "where the pleadings are sufficient to overcome [qualified immunity], the district court must deny the motion to dismiss without the benefit of pre-dismissal discovery." *Id*.

### III.    ANALYSIS

The Court finds that Plaintiffs have successfully pled their claims against Gonzalez for the alleged violation of Shelton's constitutional rights. "The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment." *Reed v. Wichita Cty. (Estate of Henson)*, 795 F.3d 456, 462 (5th Cir. 2015) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)). "Though the state has a recognized interest in detaining defendants for trial, the substantive limits on state action set by the Due Process Clause provide that the state cannot punish a pretrial detainee." *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). In the Fifth Circuit, "the legal standard used to measure the due process rights of pretrial detainees depends on whether the detainee challenges the constitutionality of a condition of his confinement or whether he challenges an episodic act or omission of an individual state official." *Id*. The Court finds that Plaintiffs have successfully pled challenges to both.

## A.    Conditions of Confinement

The Court finds that Plaintiffs have successfully alleged a conditions-of-confinement claim against Gonzalez.[4] "[T]he Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 832). Still, it is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted).

"A challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Reed*, 795 F.3d at 463 (quoting *Hare*, 74 F.3d at 644). "A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc." *Shepherd v. Dall. Cty.*, 591 F.3d 445, 452 (5th Cir. 2009). When the plaintiff is challenging a condition of confinement, the Court asks whether the condition is "reasonably related to

---

[4] The Court notes that the Fifth Circuit has at least suggested that conditions-of-confinement claims are cognizable against individual actors only in their official capacities. *See Estate of Allison v. Wansley*, 524 F. App'x 963, 970 n.4 (5th Cir. 2013) ("Appellees' claim against the individual defendants is properly analyzed as an 'episodic act or omission case,' rather than 'condition of confinement' case."). However, the Fifth Circuit has also suggested that conditions-of-confinement claims may proceed against defendants in their individual capacity where the defendant is personally involved in the challenged conditions. *See Brown v. McLane*, 807 F. App'x 410, 411 (5th Cir. 2020) ("[Plaintiff] has never alleged facts establishing [Defendant's] personal involvement in his conditions of confinement. Thus, we affirm the dismissal of [Plaintiff's] individual-capacity claims against [Defendant]…"). As the Court finds that Plaintiffs alleged facts establishing Gonzalez's personal involvement in Shelton's conditions of confinement, the Court proceeds with its analysis of Plaintiffs' conditions-of-confinement claim against Gonzalez in his individual capacity.

a legitimate governmental objective." *Reed*, 795 F.3d at 463. "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

To state a claim, Plaintiffs must allege (1) "'a rule or restriction or ... the existence of an identifiable condition or practice ... [or] that [Gonzalez's] acts or omissions were sufficiently extended or pervasive'; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [Shelton's] constitutional rights." *Duvall v. Dallas County, Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) (citations omitted). The "reasonable relationship test in conditions cases is functionally equivalent to the deliberate indifference standard employed in episodic cases." *Id*.

Plaintiffs are challenging three conditions of Shelton's confinement:

"1) the Sheriff's longstanding policy of understaffing his jail, 2) his officers' pervasive custom of non-monitoring of detainees, and 3) the practices that denied insulin and blood glucose monitoring to diabetics."

(Dkt. 166 at p. 13). Plaintiffs specifically allege, among other things, that:

- "Sheriff Gonzalez knew he was understaffing his Jail and detainees were not being observed, as evidenced by the numerous deaths, documented instances of fabricated detainee monitoring, repeated citations by the Commission in the five years before Mr. Shelton died, [] detention officer admissions, and his own December 8, 2021[,] press conference addressing staffing following a brutal sexual assault in the Jail." (Dkt. 72 at p. 98).

- "Sheriff Gonzalez … [was] aware that it was the policy or practice of providers to write single-dose orders of insulin for as long as a detainee remained in the JPC, []

though Type 1 diabetics need insulin on a repeating, multiple-times-a-day basis to survive." (*Id*. at p. 82).

- "Sheriff Gonzalez … [was] aware that it was the policy or practice of providers to order single-instance or short term, e.g., not more than three days, orders for blood glucose monitoring for as long as a detainee remained in the JPC, despite Type 1 diabetics needing ongoing, regular monitoring to live." (*Id*. at p. 83)

Plaintiffs support these allegations with lengthy specifics of past deaths and medical emergencies related to the three alleged conditions. *See* (*id*. at pp. 7 – 103). Plaintiffs allege as to each condition that Gonzalez knew of the deficiencies, knew of their fatal or serious consequences, and did not remedy the situation. *Id*.

The Court finds that Plaintiffs have sufficiently pled a conditions-of-confinement claim against Gonzalez. Gonzalez's failure to remedy the understaffing of his jail, the non-monitoring of detainees, and the deficient medical practices, as alleged, are sufficiently pervasive to amount to an identifiable condition or practice of the jail. As pled, these conditions were not reasonably related to a legitimate governmental objective. Without a legitimate governmental objective, these conditions violated Shelton's right under the Fourteenth Amendment not to be punished as a pretrial detainee. Accordingly, the Court holds that Plaintiffs have successfully pled a conditions-of-confinement claim against Gonzalez in his individual capacity.

### *Qualified Immunity*

The Court finds that Plaintiffs' conditions-of-confinement claim against Gonzalez is not barred by qualified immunity. The Court evaluates "claims of qualified immunity using a two-part test: (1) whether the facts that a plaintiff has shown establish a violation

of a constitutional right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct." *Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014). The Court "may examine these two factors in any order." *Id*. As described above, the Court finds that Plaintiffs have successfully alleged that the conditions of Shelton's confinement constituted punishment and therefore violated his constitutional rights. As such, the Court need only assess whether Shelton's right was clearly established at the time of Gonzalez's alleged misconduct.

To be "clearly established" for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). This inquiry "requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (quotation omitted). When attempting to show that a right was clearly established at the time of the violation, "[i]t is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Vann v. City of Southaven, Mississippi*, 884 F.3d 307, 310 (5th Cir. 2018) (quotation marks omitted). The inquiry "must be undertaken in light of the specific context of the particular case, not as a broad general proposition." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (brackets and ellipsis omitted). "Although qualified immunity does not require a case in point, existing precedent must have placed the statutory or constitutional question

beyond debate[,]" such that "every reasonable official would understand that what she is doing violates that right." *Id*. (brackets and quotation marks omitted).

The Court finds that Plaintiffs satisfy their burden to produce a relevant pre-existing case. Specifically, Plaintiffs look to *Shepherd, Sanchez,* and *Montano*, arguing that these three cases work together to demonstrate that Shelton's right was clearly established at the time of his violation. (Dkt. 166 at p. 30); *see Shepherd*, 591 F.3d at 450; *Sanchez v. Young Cty.*, 956 F.3d 785, 793-96 (5th Cir. 2020); *Montano*, 842 F.3d at 878-79. The Court is persuaded by this argument.

*Shepherd*, decided by the Fifth Circuit in 2009, found that a jail's evaluation, monitoring, and treatment of inmates with chronic illness was so "grossly inadequate" as to constitute a violation of the Fourteenth Amendment. *Shepherd*, 591 F.3d at 454. Specifically, the jail in *Shepherd*'s "medical program was understaffed to the point that routine treatment could not be provided," "fifty percent or more of prescriptions regularly went undelivered to inmates," and "records concerning medication administration were regularly falsified." *Id*. at p. 450. Ultimately, the Fifth Circuit upheld a jury verdict against the county in *Shepherd*—finding liability for dangerous conditions of confinement. *Id*. at p .458.

Similarly, the Fifth Circuit in *Sanchez* reversed a grant of summary judgment where plaintiffs showed evidence of a pervasive practice of detention officers not monitoring detainees with serious medical needs. *Sanchez*, 956 F.3d at p. 796. In *Sanchez*, the plaintiffs argued that the County has "numerous de facto policies that systematically deny medical

care to [] detainees," including "failing to train jailers to evaluate detainees' … medical needs." *Id*. at 792. The Fifth Circuit found that a "jury could reasonably conclude that policies where jailers were not required to review [medical] results … coupled with a policy of ignoring outside information when assessing medical needs—were a substantial factor in causing [the pretrial detainee] to be denied medical care." *Id*. at 795. Under these facts, the *Sanchez* court reversed the lower court's grant of summary judgment to the county in 2020.

Finally, in *Montano*, the Fifth Circuit found that "a reasonable juror could find that a de facto policy existed to isolate seemingly-intoxicated pretrial detainees in the bubble, and to leave them there until either they became coherent or a contract physician visited, and that the policy served no legitimate government interest." *Montano*, 842 F.3d at 878. In the *Montano* court's words: "There can be no denying [the pretrial detainee] was punished" by these conditions. *Id*. at 879. This 2016 holding reflects that leaving pretrial detainees without observation or medical care in jail qualifies as unconstitutional conditions amounting to punishment. *Id*. at 876.

Here, Plaintiffs argue that Gonzalez was on notice in 2022 that "operating a jail that was understaffed, where detention officers had a custom of not monitoring detainees, and where detainees were regularly denied medical care" amounted to unconstitutional conditions of confinement. (Dkt. 166 at p. 31). The Court agrees. Gonzalez's alleged conduct was such that all reasonable officers in his circumstances would have then known that his conduct violated Shelton's rights. Accordingly, the Court holds that Shelton's

rights were clearly established at the time of Gonzalez's alleged violation. Gonzalez's motion to dismiss Plaintiffs' conditions-of-confinement claim must be dismissed.

**B.    Episodic Acts and Omissions**

The Court finds that Plaintiffs have successfully pled an episodic-acts-or-omissions claim against Gonzalez. An episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions." *Shepherd*, 591 F.3d at 452; *see also Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) ("[W]here the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case."). In such a case, an actor is "interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott*, 114 F.3d at 53.

Plaintiffs attempt to bring an episodic acts and omissions claim against Gonzalez, the Sheriff, in his individual capacity. "Liability under the doctrine of *respondeat superior* is not cognizable in actions brought pursuant to 42 U.S.C. § 1983." *Ford v. Anderson Cty.*, 102 F.4th 292, 321 (5th Cir. 2024) (citing *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002)). "Rather, a plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003)). Liability may be found where "supervisory

officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985)). Furthermore, "[i]n order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

The Court finds that Plaintiffs have sufficiently pled both that Gonzalez implemented a deficient policy and that Gonzalez failed to train or supervise his subordinates.

### i.    *Deficient Policy*

For similar reasons as espoused above, the Court finds that Plaintiffs have sufficiently alleged supervisory liability for Gonzalez. "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (cleaned up). To successfully allege this claim, Plaintiffs must plead that (1) Gonzalez knew the jail's system was "so deficient as to expose prisoners to substantial risk

of significantly unmet serious medical needs," (2) Gonzalez "failed to properly attempt to correct it," and (3) Gonzalez's action or inaction caused Shelton's injuries. *Id*.

Plaintiffs argue that Gonzalez "was subjectively aware of the 41 dangerous practices that denied insulin and blood glucose monitoring to diabetic detainees and the ongoing danger they posed to similar detainees in his jail." (Dkt. 166 at p. 32). The Court agrees that Plaintiffs have sufficiently alleged that Gonzalez was deliberately indifferent to Shelton's medical needs by adopting dangerous practices that denied Shelton insulin and blood glucose monitoring. As explained above, the Court finds that Plaintiffs have alleged that Gonzalez not only had knowledge of the system's deficiencies, but also that Gonzalez failed to correct those deficiencies. *See* (Dkt. 72 at pp. 7 – 103). Further, the Court finds that these deficiencies were sufficiently alleged to be the moving force behind Shelton's death of diabetic ketoacidosis. Accordingly, Plaintiffs have successfully pled that Gonzalez is subject to supervisory liability for the jail's deficient policies.

### *Qualified Immunity*

The Court finds that Gonzalez is not entitled to qualified immunity for this claim. Again, as described above, the Court finds that Plaintiffs have successfully alleged a violation of Shelton's constitutional rights. *See Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) ("The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'"); *see also Austin v. Johnson*, 328 F.3d 204, 210 n.10 (5th Cir. 2003) ("Although both the Eighth and Fourteenth Amendments protect the safety and bodily integrity of

prisoners, the legal standards are virtually identical."). As such, the Court need only assess whether Shelton's right was clearly established at the time of Gonzalez's alleged misconduct. *See Wilkerson*, 774 F.3d at 851.

Again, the Court must determine whether Gonzalez's "conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). Plaintiffs look to a handful of cases to establish that Gonzalez was on notice that "he could not implement practices that impeded diabetics like Mr. Shelton from receiving insulin and that his practices that denied insulin and blood glucose monitoring to diabetic detainees constituted wanton disregard for their constitutional rights." (Dkt. 166 at pp. 35 – 36). The Court need only look to one case to determine that it agrees with Plaintiffs. *See Colle v. Brazos Cnty., Tex.*, 981 F.2d 237 (5th Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narc. Intel. & Coord. Unit*, 507 U.S. 163 (1993).

In *Colle*, the Fifth Circuit in 1993 denied a motion to dismiss on qualified immunity by a sheriff. *Id*. at p. 246. The Fifth Circuit found that the sheriff "knew of or should have known that if he staffed the jail with persons having no authority to transfer a seriously ill detainee to a hospital, and if he pursued a policy of failing to monitor the critical medical condition of a detainee, these actions would be constitutionally impermissible." *Id*. The Court agrees with Plaintiffs that *Colle* clearly established that implementing jail policies that denied seriously ill detainees access to medical care and necessary monitoring would unconstitutionally deprive detainees of reasonable medical care. Accordingly, the Court

finds that Gonzalez's alleged conduct in implementing these policies was objectively unreasonable and any claims against him for such are not barred by qualified immunity.

### ii.     *Failure to Train or Supervise*

The Court finds that Plaintiffs have successfully pled a failure-to-train-or-supervise claim against Gonzalez. "When, as here, a plaintiff alleges a failure to train or supervise, 'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)). "To show deliberate indifference, a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees." *Hutcheson v. Dall. Cty.*, 994 F.3d 477, 482 (5th Cir. 2021) (cleaned up).

Plaintiffs argue that Gonzalez "is liable for his failure to train his detention officers about Type 1 diabetes and to monitor detainees face-to-face at least every sixty minutes as this was objectively unreasonable under clearly established law" because Gonzalez had a clearly established duty to provide his officers with minimal training to detect obvious medical needs. (Dkt. 166 at p. 40). Specifically, Plaintiffs argue that Gonzalez's failure to provide "training to his detention officers to recognize the signs or symptoms of high blood glucose, low blood glucose, or diabetic ketoacidosis … placed detainees with diabetes at substantial risk of injury." (Dkt. 166 at p. 36). Further, Plaintiffs argue that Gonzalez failed

to train his detention officers to appropriately monitor detainees for signs of medical distress—"despite knowing that this flaw in his training program continued to place detainees at substantial risk of serious injuries." (*Id.* at p. 37). The Court finds that Plaintiffs have successfully pled such.

By alleging the jail's history of death, injury, and citation as detailed above, Plaintiffs establish that Gonzalez knew with substantial certainty that failing to train his detention officers to appropriately supervise detainees would result in serious injury or death for those detainees with diabetes. *See* (Dkt. 72 at pp. 77 – 121). Plaintiffs allege that Gonzalez still did not correct these training deficiencies. *See* (Dkt. 166 at p. 38). Accordingly, the Court finds that Plaintiffs have successfully pled that Gonzalez was deliberately indifferent in his failure to train.

Finally, the Plaintiffs argue that "[h]ad even one detention officer reported when Mr. Shelton told them he had Type 1 diabetes or requested insulin to a medical provider or reported the obvious signs of ketoacidosis that Mr. Shelton was exhibiting (if they had been trained to look for them) to medical personnel, Mr. Shelton would not have died." (Dkt. 166 at p. 39). Under the facts as alleged, the Court agrees. Gonzalez's failure to train his detention officers on monitoring generally, and diabetes more specifically, is appropriately alleged to have caused Shelton's death. As such, this failure to train is alleged to have violated Shelton's constitutional rights as a pretrial detainee.

The Court finds that Plaintiffs have sufficiently alleged that Gonzalez failed to train the detention officers involved in Shelton's death, this failure to train violated Shelton's

constitutional rights, and this failure amounts to deliberate indifference. Accordingly, Plaintiffs have successfully pled a failure-to-train claim against Gonzalez.

### Qualified Immunity

The Court finds that qualified immunity does not bar Plaintiffs' claim against Gonzalez for the failure to train or supervise. Again, as described above, the Court finds that Plaintiffs have successfully alleged a violation of Shelton's constitutional rights. As such, the Court need only assess whether Shelton's right was clearly established at the time of Gonzalez's alleged misconduct. *See Wilkerson*, 774 F.3d at 851. The Court finds that Plaintiffs have demonstrated such.

Plaintiffs argue that Gonzalez had a clearly established duty to provide his officers with minimal training to detect obvious medical needs. (Dkt. 166 at p. 40). Plaintiffs point to Fifth Circuit precedent which they argue establishes a duty to provide officers with minimal training to detect obvious medical needs. (Dkt. 166 at p. 40); *see Burns v. City of Galveston, Tex.*, 905 F.2d 100, 104 (5th Cir. 1990). Specifically, the *Burns* court determined that a municipality was required to train police "to recognize and not ignore obvious medical needs of detainees with known, demonstrable, and serious mental disorders." *Burns*, 905 F.2d at 104. While the *Burns* court was specifically addressing mental disorders, the Court finds that such duty reasonably encompasses physical, medical disorders such as Type 1 diabetes.

The Court finds that it was clearly established at the time of the alleged violation that detention officers must be trained to recognize and not ignore obvious medical needs

of detainees with known, demonstrable, and serious disorders. As such, any reasonable officer in Gonzalez's position would know that "not training officers on Type 1 Diabetes and to monitor detainees individually face-to-face" would result in a violation of the rights of a detainee with a serious medical disorder. Accordingly, the Court finds that qualified immunity does not protect Gonzalez from a failure-to-train claim at this time.

### iii.    Punitive Damages

Plaintiffs seek punitive damages pursuant to section 1983, arguing that they have alleged Gonzalez's deliberate indifference and therefore "sufficiently state his reckless and callous indifference to Mr. Shelton's rights." (Dkt. 166 at p. 45). The Supreme Court has found punitive damages can be awarded "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Here, Plaintiffs have sufficiently alleged a section 1983 claim against Gonzalez. The Court finds that, based on the facts alleged, Plaintiffs could plausibly make out a claim for punitive damages under the *Smith* standard. Accordingly, the Court must deny Gonzalez's motion to dismiss as to Plaintiffs' claim for punitive damages.

## IV.    CONCLUSION

The Court finds that Plaintiffs have successfully pled claims against Gonzalez for the alleged violation of Shelton's constitutional rights. The Court also finds that Gonzalez

should not be afforded qualified immunity for any claim under the facts as alleged.

Accordingly, the Court **DENIES** Gonzalez's Motion to Dismiss (Dkt. 137).

SIGNED at Houston, Texas on September 30, 2025.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE